167 So.2d 374

**STATE of Louisiana**

v.

**Carrol VIATOR.**

No. 47176.

July 1, 1964.

Rehearing Denied Oct. 7, 1964.

Joseph A. Koury, Lafayette, G. Wray Gill, New Orleans, for defendant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Knowles M. Tucker, Dist. Atty., Leon E. Roy, Jr., Asst. Dist. Atty., for appellee.

SUMMERS, Justice.

The indictment which is the subject of this prosecution charges that Carrol Viator, on or about the 13th day of September 1963, "unlawfully committed public bribery by offering to give directly and indirectly, something of apparent present and prospective value to Leon Kordek, a public employee, and a person about to be called as a witness at a trial before a Court authorized to hear evidence and take testimony, with intent to influence the said Leon Kordek's conduct in relation to his position, employment and duty, in violation of La.R.S. 14:118: PUBLIC BRIBERY."

The pertinent statute (LSA–R.S. 14:-118) defines and denounces the crime in these terms:

"Public bribery is the giving or offering to give, directly or indirectly, anything of apparent present or prospective value to any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty:

(1) Public officer or public employee; or

\*　　\*　　\*　　\*　　\*　　\*

(4) Witness, or person about to be called as a witness, upon a trial or other proceeding before any court, board, or officer authorized to hear evidence or to take testimony."

From the trial court's per curiam, and from the brief filed on behalf of defendant, we learn that in the month of September 1963 the defendant was on trial on a charge of vagrancy in the Sixteenth Judicial District Court which is the same court wherein the instant prosecution took place. The trial court's per curiam recites: "Lieutenant Kordek of the State Police was called as a witness for the State. Upon entering the Courthouse on the morning of the trial, he was accompanied by Mr. Ray Heard, the Chief Criminologist and Chemist of the Louisiana State Police, and Sergeant Robert Knight, also of the State Police. They met the defendant in the hall. The officers knew the defendant and the defendant knew them. The defendant asked them what they were doing here; if they had come to testify against him. Lieutenant Kordek answered in the affirmative. The defendant then asked him what he would testify about. Lieutenant Kordek answered that he had a subpoena and that he would answer whatever questions he could that were propounded to him. All four persons entered the Courtroom and the three State Police officers sat in the

front row in the jury box; the defendant took a seat with the audience in the Courtroom.

"There were several other misdemeanor cases set for trial that day and the Court proceeded to hear some of them. During a recess of the Court, the defendant came inside the railing in the Courtroom and approached the jury box where the officers were seated and stood in front of them. He again asked Lieutenant Kordek if it was true that he was here to testify against him. Lieutenant Kordek replied the same way that he had in the hall. Whereupon, the defendant stated substantially that the officer was working for the wrong side and perhaps was not getting much of a salary; if the officer would come work for him, he would pay him $600.00 per month, and asked the officer if he was making that much money. Lieutenant Kordek replied that he was not making nearly that much. Then, Sergeant Knight, who was seated next to Lieutenant Kordek, asked the defendant if that proposition would go for him also. The defendant answered that it did and he would likewise pay him $600.00 a month to work for him. Whereupon the defendant said that we should go back to the old days when they did not have kangaroo courts and where men settled their disputes 'this way'. He then went through the motion of making a quick draw to his hip pocket and coming up with an imag-

inary gun which he pretended to fire from his hip. He then walked away to his seat."

Thereafter the indictment was returned, the trial took place and the defendant was convicted by a jury of five and sentenced to three years at hard labor in the penitentiary.

Three bills of exceptions were reserved during the proceedings.

In his closing argument to the jury the district attorney said, "That the element of intent to influence the conduct of a witness can be an intent to make that witness lose his temper."

Defendant's counsel objected to this statement as an attempt on the part of the district attorney in his argument to make the jury believe that there could be an intent to influence the conduct of a witness by making him lose his temper and that this was an improper statement of the law. He requested that the court so instruct the jury.

The court overruled the defendant's objection and Bill of Exceptions No. 1 was reserved.

The trial court's per curiam sets forth that the defendant had taken the witness stand and admitted that he had offered Lieutenant Kordek the amount of $600.00 per month to quit working for the State Police and to come to work for him, the defendant, but that in making this offer he did not intend to "buy out" the witness or to influence his conduct as charged. He said that he hated Lieutenant Kordek very much and that he had made the offer to him to make him "mad" or get him angry.

The district attorney's answer to this, by his argument, was, in effect, that if the defendant's words were designed to make the witness "mad" and thereby influence his conduct in relation to his position as a witness, the intention to exert that influence was sufficient to supply the requirement of intent in the statute.

The trial court concluded that whether the defendant intended that his offer to the prospective witness, by making him mad, would influence his conduct presented a question of fact for the jury to determine. Hence, he approved the district attorney's "passing statement" at the conclusion of his argument as being a permissible inference from the evidence. LSA–R.S. 15:380, 381, 383.

■ While the remark of the district attorney may not be an accurate statement of the law, nevertheless it should be remembered that, in making the remark, the district attorney was merely interpreting the law, which was in no manner binding on the jury. The failure of the judge to correct the error then and there was not cause for a new trial.

■ As this court said in State v. Stickney, 167 La. 1050, 120 So. 853 (1929), "* * * district attorneys, in the heat of argument, cannot be expected always to state the law with the precision of a judge."

Another case in which this court dealt with this problem is State v. Farris, 146 La. 523, 83 So. 791 (1920) where the court observed:

"Taking up the first statement, which is properly presented for our consideration, we find that it amounts to nothing more than an erroneous statement of the law, which we are informed by the court below was later, in a manner, corrected. This does not furnish grounds for reversal, since, as stated by us in former cases, the counsel for the state has as much right to err in his law as has counsel for the accused. It is the duty of the court to give the jury the law of the case, and to charge them that they should take it as given by him, which we must assume was done in this case."

In State v. Bacon, 138 La. 654, 70 So. 572 (1916) this court in treating an erroneous statement of the law by the district attorney, said, "* * * a verdict is not to be set aside because the district attorney was wrong in his law. District attorneys have the same right to be wrong in their law that the counsel for accused have; and the records of this court will show that they exercise it, too, just as counsel for accused do."

Since prior to 1896 this rule has been consistently followed by this court, as is demonstrated by its early reaffirmation of it in State v. Chevis, 48 La.Ann. 575, 19 So. 557 (1896), when this language was used:

"We have announced in several cases that we will not interfere with the rulings of the trial judge relating to the argument and conduct of counsel in the trial. State v. Anderson [and Blackstone], 45 La.Ann. [651] 654, 12 South. 737.

"The jury are controlled by the judge's instructions on the law, and not what is stated by counsel.

"If the indiscreet utterances of counsel as to the law are objectionable to the opposite party, the remedy is to ask for special instructions, in case the points at issue are not covered by the general charge. If refused, a bill can be taken, and the charge reviewed by this court."

■ Thus, we say, the defendant here has no cause to complain, for we assume, as we should under the law, that the judge in his general charge has instructed the jury as to the correct law of the case. And, furthermore, the defendant had a clear right to request a special charge by the judge on this very objection. The refusal of

the judge to properly charge the jury would have furnished grounds for a bill of exceptions in order that this court might review the matter.

For the foregoing reasons Bill of Exceptions No. 1 is without merit.

Bill of Exceptions No. 2 was reserved to the ruling of the court denying a motion for a new trial. The motion was based upon the overruling of defendant's objection to the district attorney's remarks which we have considered in detail in connection with bill number one. For these same reasons we approve the action of the trial court in denying the motion for a new trial.

Bill of Exceptions No. 3 was reserved to the denial of a motion in arrest of judgment.

First, defendant's motion sets forth that the indictment does not charge a crime or offense denounced by the laws of Louisiana.

■ In answer, we need only remark that the indictment is couched in the exact language of the statute. If the statute denounces a crime (which it does), so does the indictment. Defendant has made no argument on this ground in brief to support his contention and in that regard we conclude that the indictment is not defective.

The argument on the motion, however, is predicated primarily upon the proposition that the indictment does not set forth or identify the trial in which the witness, to whom the bribe had been offered, was to testify, or the stage of the trial at which the offense was alleged to have occurred. For these reasons it is asserted that the indictment does not identify the transaction to which it relates with a sufficient degree of particularity. So defendant argues, the indictment is insufficient on its face to support a plea of former jeopardy; and, furthermore, he cannot adequately defend himself against such a vague and indefinite indictment.

■■ If there is an uncertainty in the indictment in its failure to set forth the court wherein the witness was about to testify or the stage of the trial at which the offense occurred, as defendant contends, here, it is a matter which should have been corrected by a motion to quash in limine. LSA–R.S. 15:252, 284. Defects of this nature, being merely formal, do not afford adequate ground for arresting judgment. LSA–R.S. 15:518; State v. Durbin, 235 La. 989, 106 So.2d 443 (1958).

■ At the outset it must be observed that the indictment does charge the defendant with offering to give something of value to Lieutenant Kordek, "a public employee", with intent to influence his conduct in relation to his position. The date of the offense and the parties involved on that phase of the offense are set forth in the indictment. This, in itself, is denounced by the statute without regard to whether the public employee was about to be called as a wit-

ness at a trial. Thus, the indictment in that respect is certain for it sets forth with particularity all of the elements of the crime and furnishes adequate grounds for a plea of former jeopardy. It is also sufficiently definite to permit the defendant to adequately defend himself on that charge.

■■ The alleged uncertainty that the indictment does not sufficiently identify the trial or the stage thereof at which the alleged offense occurred is merely formal and technical. Inasmuch as the indictment charges the defendant in the very language of the statute, he is charged with all of the essential elements of the crime and any objection which the defendant had concerning uncertain details of the elements of the crime should have been asserted by demurrer or by motion to quash, and the district attorney could have been required to furnish a bill of particulars in limine. LSA–R.S. 15:252, 253, 284, 288. Thereby the defendant's constitutional right to be informed of the nature and cause of the accusation is preserved. La.Const. of 1921, art. 1, § 10, LSA; LSA–R.S. 15:227. It is sufficient to charge the offense in the language of the statute. State v. Ward, 208 La. 56, 22 So.2d 740 (1945). See, also, State v. Scheuering, 226 La. 660, 76 So.2d 921 (1954).

We find that no substantial right of the accused has been prejudiced. LSA–R.S. 15:557.

The conviction and sentence are affirmed.

FOURNET, C. J., dissents and will assign written reasons.

McCALEB, J., dissents in part with written reasons.

HAMLIN, J., dissents, being of the opinion that the trial judge's per curiam shows that all defendant did was to "needle" the officer by insulting him.

McCALEB, Justice (dissenting in part).

I do not subscribe to the ruling on Bill No. 1 that it was proper for the district attorney to state in his closing argument to the jury that, in a prosecution for bribery, " * * * the element of intent to influence the conduct of a witness can be an intent to make that witness lose his temper."

Under Articles 381 and 382 of the Code of Criminal Procedure (R.S. 15:381, 382), counsel are permitted to argue to the jury the law and the evidence of the case and, while they may draw from the evidence any conclusion which to them may seem fit, they may not draw from such evidence " * * * an incorrect conclusion of law."

The crime of public bribery requires that there must be an intent " * * * to influence his (the offeree's) conduct in relation to his position, employment, or duty: * * *". That is what R.S. 14:118 plainly

provides. Therefore, if the bribe is offered with any other intent—for example, with a design to either please or displease the offeree—or for any purpose other than to influence the offeree's conduct in relation to his duty, i. e., *to corrupt him*, the crime of public bribery is not committed. See 11 C.J.S. Bribery § 2, pp. 844, 845. 12 Am. Jur. (2d) "Bribery", Section 23, p. 100, declares: "An indictment or information charging bribery must allege that the bribe was offered or received with a corrupt intent." Razete v. United States, (C.A. 6 Ohio) 199 F.2d 44 and other cases are cited in support of the text.[1]

It was grievous error for the district judge to allow the jury in this case to decide appellant's guilt under the erroneous impression that he was amenable under the law to the charge against him even though he had no intent to influence Lieutenant Kordek's testimony and that it sufficed that the only purpose of the offer was to make him angry.

The cases cited in the majority opinion to the effect that a new trial will not be granted merely because of incorrect conclusions of law drawn by a district attorney in his argument to the jury since it is to be assumed that the judge will properly instruct the jury on the law of the case are inapplicable here. This is because the record in this case shows that the judge, in overruling the objection of defense counsel, specifically approved the erroneous conclusion of law against which the objection of defense counsel was levelled and refused to instruct the jury that it was improper. Hence, it will not do to conclude that defendant was not prejudiced.

I think a new trial should be granted.

FOURNET, Chief Justice (dissenting).

While counsel have the right to draw from the evidence received in a case, or from the failure to produce evidence shown to be in the possession of the opposite party, any conclusion which to them may seem fit, they "have no right to draw from such evidence or suppression of evidence *an incorrect conclusion of law*." Article 382 of the Louisiana Code of Criminal Procedure, now R.S. 15:382. I cannot, therefore, agree with the ruling of the trial judge that the district attorney's statement in his closing argument to the jury that "an intent to make" a "witness lose his temper," is "the element of intent to influence the conduct of a witness" within the meaning and contemplation of Article 118 of the Louisiana

---

1. Wharton's Criminal Law and Procedure Vol. 3, Sec. 1381, pp. 773, 774, under the heading "Bribery and Extortion" has the following to say as to the mental state of the accused: "Bribery must be committed with a *corrupt intent*, that is, with the intent of influencing official action to obtain a result which the party would not be entitled to as a matter of right." (Italics mine).

Criminal Code (now R.S. 14:118),[1] defining the crime of Public Bribery, or the holding of the majority that such ruling was not prejudicial to the cause of the accused. (The emphasis has been supplied.)

A mere reading of this article will readily disclose the gravamen of the offense of public bribery, in so far as pertinent here, is the giving or offering to give something of value or apparent value to a witness or person about to be called as a witness *with the intent to corrupt* such person, that is, the giving or the offer to give must be *"with the intent to influence his conduct in relation to his position, employment, or duty."* (The emphasis has been supplied.)

Whether the accused in this case, in making the statement to Lieutenant Kordek of the state police, who had been subpoenaed as a witness in a case pending against the defendant, that is attributed to him, intended thereby to corrupt Kordek in the performance of his duty, or only to anger him, was a question of fact for the jury to decide, and the accused was entitled to have the jury charged accordingly. Consequently,

when the trial judge, in the presence of the jury, denied defense objection to the prosecutor's statement as being an incorrect statement of the law, and refused to instruct the jury correctly, but, instead, clearly and unequivocally agreed with the statement of the law made by the prosecutor, he placed his stamp of approval thereon, thereby precluding the jury from considering Viator's only defense, that is, that he lacked any intent to influence or corrupt Kordek by engaging him in conversation, not only in open court but also in the presence of other police officers and persons, and intended, instead, to anger or "needle" the officer, as my learned colleague puts it in his dissent, as he entertained only hatred and contempt for this officer. Clearly, if the jury believed defendant's explanation of the incident, he was not guilty of the offense charged. Hence, I cannot conceive of a more prejudicial error to the cause of the defendant than the ruling of the trial judge that forms the basis of the first two Bills of Exceptions. Under these circumstances, I cannot agree with the statement in the majority opinion

1.  Article 118 provides that "Public Bribery is the giving or offering to give, directly or indirectly, anything of apparent present or prospective value to any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty: (1) Public officer or public employee; or (2) Election official at any general, primary, or special election; or (3) Grand or petit juror; or (4) Witness, or person about to be called as a witness, upon a trial or other proceeding before any court, board, or officer authorized to hear evidence or to take testimony.

"The acceptance of, or the offer to accept, directly or indirectly, anything of apparent present or prospective value, under such circumstances, by any of the above named persons, shall also constitute public bribery.
" * * *."

that we can assume "the judge in his general charge has instructed the jury as to the correct law of the case," and the defendant therefore has no cause to complain, for the trial judge unquestionably entertained a different view of the law, as he had stated most emphatically when he ruled against defense counsel at the time the objection was made to the prosecutor's appreciation of the law, and also in his per curiams to these bills, for the judge not only there reaffirmed his ruling that the district attorney's statement of the law as given was correct, but also vigorously sought to defend and support that conclusion.

I must, therefore, respectfully dissent.