329 So.2d 181 (1976)
STATE of Louisiana
v.
Walter BRUMFIELD.
No. 56876.
Supreme Court of Louisiana.
February 23, 1976.
Rehearing Denied March 30, 1976.
*184 Alex W. Wall, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Anthony J. Graphia, James E. Boren, Asst. Dist. Attys., for plaintiff-appellee.
SUMMERS, Justice.
Appellant Walter Brumfield was charged on July 23, 1974 by the grand jury of the Parish of East Baton Rouge with the June 9, 1974 second degree murder of Eddie C. Robinson, Jr., contrary to Article 30.1 of the Criminal Code. He was convicted and sentenced to a term of life imprisonment without benefit of parole, probation or suspension of sentence for twenty years. Appellant relies upon eleven assignments of error for reversal of the conviction and sentence.
In the early morning hours of Sunday, June 9, 1974, Odette Louis was awakened by a knock on her door. Someone dressed in a dark brown shirt asked if this was the residence of Eddie Robinson. She aroused her brother-in-law, Eddie Robinson, who walked toward the front door. When he was four or five feet from the door several shots rang out. Robinson had been shot twice. He wandered around the house for several moments with blood spurting from his neck. The police were called, but Robinson was dead upon arrival at the hospital.
The victim was a guard at the Schuylkill plant in Baton Rouge. A rather lengthy strike was in progress involving employees of Schuylkill. Brumfield was an employee who was on strike. Ellison Shepherd, another striking employee, participated in the incident which resulted in the death of Robinson. A non-employee, Larry Butler, was also a participant.
There is a conflict in the testimony as to who fired the shots and as to the general involvement of each in the incident. Shepherd and Brumfield said Butler did the shooting, while Butler denied this. In any event, the testimony shows a knowing participation by the three.

Assignment No. 1
Prior to trial appellant filed a motion to produce all physical evidence in order that it could be "properly inspected and examined by an expert" on his behalf "to insure proper defense and a fair trial." The motion also alleged that the State would use expert testimony to prove the elements of the crime and that defendant would be prejudiced by the State's use of expert testimony if he were denied that same right.
The motion sought production of the following listed objects in the possession of the State:
"1. The .22 caliber automatic pistol allegedly used in the crime.
2. The .22 caliber casing and spent cartridges, including slugs which were found in the body of and home of Eddie C. Robinson, Jr.
3. Other spent cartridges or slugs retrieved in connection with this offense.
4. Other weapons retrieved from the defendants which may be connected to this offense.
5. One or more doors taken from the home where the alleged offense occurred.
6. Photographs or other evidence indicating results of fingerprint tests *185 made on the alleged murder weapon."
The motion was argued and denied. Error with regard to the refusal to order production of items 5 and 6 (the door and photographs) is not urged in appellant's brief, and the assignment of error with regard to these two items is considered abandoned. State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972). Defense counsel relies upon the decision in Barnard v. Henderson, 514 F.2d 744 (5th Cir. 1975), to support his contention that the gun and cartridges should be produced.
We have held that
"As a general proposition the State is not required to produce the physical evidence it intends to use at the trial. Exceptions to this rule have recognized the right of a defendant to view and copy his written confession in the possession of the prosecutor, State v. Dorsey, 207 La. 928, 22 So.2d 273 (1945); to obtain production of a taped confession, State v. Hall, 253 La. 425, 218 So.2d 320 (1969); or some of the confiscated narcotic evidence in a narcotic prosecution, State v. Migliore, 261 La. 722, 260 So.2d 682 (1970). When proper allegations support a finding that the defendant acted in self-defense and specifies that the weapon sought was used by the alleged victim against the defendant, supporting a claim of self-defense, we have required production of the weapon by the State. State v. Woodruff, 281 So.2d 95 (La.1973)." State v. Collins, 308 So.2d 263 (La.1975).
None of the exceptions to the general rule are relevant here. Recently in State v. White, 321 So.2d 491 (La.1975), we pointed out that the decision in Barnard v. Henderson, 514 F.2d 744 (5th Cir. 1975), was not authoritative and denied extension of pre-trial discovery in a fact situation very similar to the case at bar.
Careful analysis of the facts in this case makes clear that the controverted question was not whether the gun and cartridges were used in killing the victim; the real question was which of three persons did the shooting. It is noted, moreover, that defense counsel made no effort to have an expert examine the gun and cartridges during the trial or any recess thereof. Examination of spent cartridges is a relatively simple procedure with the aid of a dual microscope. Little time is required to perform the analysis.
An extension of pre-trial discovery is not warranted here.
This assignment is without merit.

Assignment No. 2
Defendant applied for and obtained the issuance of a subpoena duces tecum to compel the Office of the District Attorney and the Division of State Police, Department of Public Safety, to produce the "rapsheet" of Larry Butler, a principal State witness. The State moved to quash the subpoena duces tecum, and the motion was granted by the trial judge.
The defendant argues that to deny production of the "rap sheets" in the possession of the State denies him the opportunity to be informed of the witness Butler's criminal record for use to impeach Butler's testimony.
The contention is without merit. At the trial Butler's prior criminal record was brought to the jury's attention by the State. On cross-examination, defense counsel questioned Butler in detail concerning his prior convictions, which he readily admitted. Defense counsel also produced detailed information concerning Butler's nine prior convictions. Somehow, the record does not disclose how, defense counsel was able to obtain the needed information.
Aside from the fact that defense counsel had no right to information in the district *186 attorney's files until it was produced in court, La.R.S. 44:3, and the fact that the State did not suppress any exculpating evidence which would be helpful to the defense, the defense was well-informed of Butler's prior convictions.
This assignment has no merit.

Assignment No. 3
This assignment was neither briefed nor argued, and is therefore deemed abandoned. State v. Edwards, supra.

Assignment No. 4
During examination of the State's witness, Esther Robinson, the victim's widow, the State's attorney questioned her about a mail box slot adjacent to the front door of the victim's residence. The State's theory of the case was that the mail slot was used by the defendant and his partners in this venture to sight Robinson as he came to the front door and permit them to discharge their gun into the door so that the shot would strike the victim.
While she was being examined, Esther Robinson viewed photographs of the front door and pointed out the mail slot, later identifying it again on another photograph. Thereafter, the State introduced a photograph of the front porch of the residence showing the mail slot. Another photograph was then introduced in evidence showing that the mail slot had been removed. Previously, the State's first witness, Odette Louis, testified that there was a mail slot by the front door of the Robinson house. All of this evidence came into the record without objection by the defense.
The defense objected, however, when Esther Robinson testified that the mail slot was removed "[B]ecause you could see through". The objection is based upon the contention that the testimony was irrelevant, for no evidence had been introduced at that time linking the mail slot to the crime, nor was evidence subsequently admitted establishing the relevancy of the testimony objected to. Defense counsel argues, moreover, that the testimony was prejudicial, for it suggested to the jury that the perpetrators of the crime "could use the mail slot to more effectively punish the victim."
Because the defense allowed evidence concerning the mail slot to be admitted without objection, and due to the fact that the objected-to evidence was relevant to the inference the State sought to establish in support of its theory of the case, there was no error in the ruling of the trial judge. According to the State, an inference could be drawn from the fact that a person could see through the mail slot that the perpetrators of the crime did view the victim through the aperture as he approached the door from within the house. In doing so they were enabled to discharge the gun accurately, mortally wounding the victim.
"Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
"Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible." La.R.S. 15:441.
This bill has no merit.

Assignment Nos. 5 and 7
The State called as a witness Julius Bombet, chief investigator and photographer for the District Attorney's office. He testified that he made photographs on July 2, 1974, following the June 9, 1974 offense for which defendant was being tried. The photographs pertinent to these assignments depicted the front of the residence in which the victim, Eddie Robinson was slain. After Bombet testified to the time and place of making the photographs, the State offered them in evidence. The defense *187 objected that the photographs were irrelevant, at which time the State's attorney announced that further testimony would be elicited in connection with the photographs. Whereupon, the Court sustained the objection "at the present time."
The State then proceeded to qualify Bombet as an expert photographer and to establish by his testimony that he reconstructed the scene as it existed on the night of the slaying with the help of the victim's wife. This was accomplished by reinserting the mail slot, which had been removed in the meantime, into the position it originally occupied. He then testified that he took photographs through the mail slot. The trial judge finally ruled that the photographs were inadmissible.
After this ruling Bombet was asked whether he had an opportunity to look through the mail slot after it was replaced. When he answered in the affirmative, defense counsel moved for a mistrial. The motion was denied and error was assigned.
As the defense contention is understood, the photographs referred to were irrelevant and it was error to dwell upon them as the State did in connection with Bombet's testimony. Again the argument is made that the State was improperly attempting to support its theory of the case that the participants in the killing used the mail slot to aim at the victim.
For the reasons set forth under assignment number four, the photographs were relevant. Moreover, the State's attempt to reconstruct the scene of the crime and establish that fact, by Bombet's testimony and the photographs, would ordinarily be permissible. The probative value of such an experiment or reconstructed evidence depends in large measure upon the extent to which the reconstructed scene was identical with or similar to that which existed at the time of the happening. McCormick, Evidence, 485 (Cleary ed. 1972). Thus, such evidence is not invariably inadmissible. It's admissibility should depend upon the accuracy of the reconstruction established as a predicate.
Under the circumstances outlined, there is no merit to these assignments.

Assignment No. 6
Testimony disclosed that the weapon fired at Robinson was a .22 caliber automatic owned by Irvin Heatley and that the gun at one time was in Brumfield's possession. Heatley also testified that the gun had not been returned to him. When Heatley was asked whether, on the evening before the crime, he asked defendant if he had the gun, defense counsel objected after Heatley replied that he did.
The objection is grounded on the fact that the State responded, in answer to a motion for bill of particulars, that defendant "did not give a statement or confession, either oral or written or taped, regarding the alleged crime." The argument is that Heatley's testimony that he asked defendant whether he still had the gun the evening before the slaying was an attempt to elicit an inculpatory statement made by the defendant. On this basis, it is argued, the State failed to disclose an inculpatory statement prior to trial in its bill of particulars or as required by Article 768 of the Code of Criminal Procedure.
Reference to Article 768 discloses that confessions and inculpatory statements are treated together. For all practical purposes the rules applicable to confessions are applicable to inculpatory statements. State v. Robinson, 215 La. 974, 41 So.2d 848 (1949). The distinction is that a confession admits commission of the crime, whereas the inculpatory statement admits a fact, circumstances or involvement which tends to establish guilt or from which guilt may be inferred.
"As used in Article 768, the term inculpatory statement refers to the out-of-court admission of incriminating facts made by a defendant after the crime has *188 been committed. It relates to past events. . . ." State v. Fink, 255 La. 385, 231 So.2d 360 (1970). See also State v. McKinnon, 317 So.2d 184 (La.1975).
Defendant's objection is therefore without merit, for the statement elicited by the interrogation was made prior to the commission of the crime and it is not governed by the rules relating to inculpatory statements. Here the State's question sought to elicit testimony establishing facts which tended to prove commission of the offense charged.

Assignment No. 8
James Joseph, a witness for the State, saw three of the participants shortly after the slaying. Joseph was permitted to testify to what Ellison Shepherd told him. The question posed by the State was, "What did Shepherd tell you?"
Defense counsel objected that the question called for hearsay testimony and further complained that the State had failed to disclose the facts which the testimony would reveal in its bill of particulars. Joseph then testified that Shepherd said they had shot at Robinson's house and they thought they might have hit somebody.
In briefing the hearsay issue defense counsel relies upon Section 434 of Title 15 of the Revised Statutes, declaring hearsay evidence inadmissible, and the case of State v. Jacobs, 281 So.2d 713 (La.1973). The Jacobs case states the hearsay rule and holds that the hearsay testimony in that case did not fall within certain exceptions to the rule.
If it be conceded that the evidence is hearsay, the matter is not such that it warrants reversal. La.Code Crim.Pro. art. 921. The evidence objected to is in reality not disputed. Brumfield took the stand on his own behalf. His defense was that this incident was part of an activity related to the strike in which he participated, an activity designed to scare the "management people", the matter having been discussed the preceding day in the picket line. On the night of the incident resulting in Robinson's death, he joined Larry Butler in Butler's car, knowing that the .22 caliber automatic and a nine millimeter gun were there. They drove to Shepherd's house and picked him up. Shepherd then directed them to Robinson's house on Grebe Street. They parked nearby on Kingfisher Street and Butler instructed Shepherd to stay in the car and keep the motor running. According to Brumfield, he took the nine millimeter gun and Butler took the .22 caliber automatic. They got out of the car and walked to the Robinson residence.
Butler then went onto the front porch, knocked on the front door and asked if Robinson lived there. At that time a brown Pinto automobile turned off Scenic Highway heading in their direction, prompting Brumfield to cry out to Butler to come off the porch. As he did so, shots rang out in rapid succession. Brumfield ran, followed by Butler. Brumfield denied that he fired any shots, maintaining that only Butler discharged a gun at the time.
Joseph's testimony that Shepherd told him that they had shot at Robinson's house and they thought they might have hit someone was therefore a statement fully in keeping with the version Brumfield was to give later in his testimony. At no time did Brumfield deny that shots were fired as a result of the joint venture in which he, Butler and Shepherd participated, his defense being that he did not personally fire the shots and he joined the project without any intent to kill. Therefore, any objection to the hearsay character of Joseph's testimony was cured by Brumfield's later recitations. State v. Lucien, 323 So.2d 784 (La.1975); State v. Brown, 288 So.2d 339 (La.1974); State v. Maiden, 258 La. 417, 246 So.2d 810 (1971).
A mere error committed during the progress of a prosecution does not warrant *189 the setting aside of a verdict unless it is of such grave import as to give rise to the belief that if it had not been for such error, the verdict would have been different. State v. Bryant, 209 La. 918, 25 So.2d 814 (1946). The error must be substantial. State v. Lane, 292 So.2d 711 (La.1974); State v. Paciera, 290 So.2d 681 (La.1974); State v. Michel, 225 La. 1040, 74 So.2d 207 (1954); State v. Scott, 221 La. 643, 60 So.2d 71 (1952).
In view of Brumfield's testimony, the ruling of the trial judge permitting Joseph to testify to what Shepherd told him caused no prejudice to Brumfield, for he later testified to the same effect.
This bill has no merit.

Assignment No. 9
Prejudicial error is claimed by the defense to have occurred when the State's attorney in closing argument stated:
"... however, 444 of our Code states that if a statute has made it a crime to do a particular act, no further proof of intent is required than that the accused voluntarily did the act ...."[1]
The full context of the foregoing statement, relied upon by the defendant, follows a definition of second degree murder in the argument in these words:
"... the killing of a human being when the offender has the specific intent to kill or to inflict great bodily harm. That is the charge. Included in that charge, by way, or rather, before we get to that, the intent that has been talked about is a specific intent and the law provides for proof of intent in statutory crimes; however, 444 of our Code states that if a statute has made it a crime to do a particular act, no further proof of intent is required than that the accused voluntarily did the act, and any evidence that he did not know such act to be forbidden by law is inadmissible."
At this time defense counsel objected that that portion of the prosecution's statement first quoted, upon which he claims error, was not a proper statement of the law as it relates to the facts of the case on trial. Whereupon, the trial judge admonished the jury
"... that during the final argument the attorneys are permitted not only to argue the facts to you, they are free to argue to you their interpretation of the law in regard to this case. Keep in mind that it is the sole prerogative of the jury to determine the facts and the law but the jury is duty bound to follow the law as given to it by the Court at the conclusion of the argument."
The remainder of the State's argument has not been transcribed, and we are unable to say what effect the complete argument may have had upon the statement objected to. Nevertheless, it is worthwhile to mention that a number of offenses are pertinent to this prosecution, offenses which do not require specific intent. For instance, manslaughter is a responsive verdict to the charge of second degree murder. Manslaughter is a homicide which may be committed without any intent to cause death or great bodily harm, when the offender is engaged in the perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person. La.R.S. 14:31(2)(a). Some of the nonenumerated felonies and misdemeanors affecting the person which constitute elements of such a manslaughter conviction are aggravated criminal damage to property, La.R.S. 14:55; illegal use of weapons, La.R.S. 14:94; aggravated assault, La.R.S. 14:36; and aggravated battery, *190 La.R.S. 14:34. These crimes, which may have the effect of reducing a charge of second degree murder to manslaughter, do not require specific intent; they are committed upon proof that the accused voluntarily did the act. With these authorities in mind it cannot be said that Section 444 of Title 15 of the Revised Statutes is entirely irrelevant to the case at bar. The article is indeed relevant to whether a verdict of guilty as charged or the responsive verdict of manslaughter was to be rendered.
While the prosecutor's statement taken alone may arguably present an issue if the permissible responsive verdict is not considered, this alone does not amount to reversible error. It should be remembered that in quoting Section 444 in the context of this case the prosecutor was merely stating his professional opinion of the applicable law, a permissible argument under trial procedure. La.Code Crim.Pro. art. 774. Prosecutors cannot always be expected to state the law with the precision of a judge. State v. Viator, 246 La. 809, 167 So.2d 374 (1964); State v. Stickney, 167 La. 1050, 120 So. 853 (1929); State v. Farris, 146 La. 523, 83 So. 791 (1920); State v. Bacon, 138 La. 654, 70 So. 572 (1916); State v. Chevis, 48 La.Ann. 575, 19 So. 557 (1896).
Counsel also argues that the State unfairly prejudiced the defendant with this statement in closing argument to the jury: "We're doing our job. And we're going to continue to do our job. And we're going to stop this kind of stuff. We're going to make sure of that . . . ."
As early as 1922 this Court declared in State v. Sisemore, 151 La. 675, 92 So. 274, that it was proper for an Assistant District Attorney to argue that the jury should inflict extreme penalties to halt a rampant crime wave. This precedent was followed in State v. Brown, 288 So.2d 339 (La.1974), and in State v. Peters, 302 So.2d 888 (La.1974), where this Court again held that it was proper argument to refer to the seriousness of drug addiction and the need to suppress the evil in the community. The statement complained of in the case at bar is within the contemplation of these holdings and no error is attributable to its pronouncement.
This assignment is without merit.

Assignment No. 10
After charging the jury as to the nature of its function generally, as required by law, the trial judge then charged:
"Article 23 of the Louisiana Criminal Code reads as follows:
The parties to crimes are classified as follows:
(1) Principals; and
(2) Accessories after the fact.
In this case, we are concerned only with `principals,' which is defined in Article 24 of the Criminal Code:
All persons concerned in the commission of a crime whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
"The accused in this case is charged with the crime of second degree murder; however, it is necessary that I quote for you the General Article on homicide so that you will have a complete and proper understanding of the crime charged. Article 29 of the Criminal Code treats of homicide, as follows:
Homicide is the killing of a human being by the act, procurement or culpable *191 omission of another. Criminal homicide is of four grades:
(1) First degree murder
(2) Second degree murder
(3) Manslaughter
(4) Negligent homicide
Article 30.1 of our Criminal Code reads:
Second degree murder is the killing of a human being: (1) When the offender has a specific intent to kill or inflict great bodily harm; or (2) When the offender is engaged in the perpetration of aggravated arson, aggravated burglary, aggravated kidnapping, aggravated rape, armed robbery, or simple robbery, even though he has no intent to kill.
"We are concerned in this case with the first part of this Article, `When the offender has a specific intent to kill or to inflict great bodily harm.' You will note that under second degree murder, it speaks of `intent' as being one of the elements of the crime. Our law, under Article 10 of the Criminal Code, defines `intent.' It says: `Criminal intent may be specific or general.' And remember that in regard to the charge of second degree murder we are concerned only with specific criminal intent, `. . . when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.'
"Title 15, Section 445, says that, `. . . though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction.' Since in this case the State is relying upon the specific intent to kill provision of Article 30.1, I will at this time instruct you as to the law with reference to specific intent to kill or specific intent to inflict great bodily harm, as follows:
In order to show intent, evidence is admissible of similar acts independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction.
"The law knows no specific time within which an intent to kill or an intent to inflict great bodily harm must be formed so as to make a homicide murder. If the will of the person accompanies the act a moment before the act which causes the death, it will be as completely sufficient to make the offense murder as if it were a day or any other time. It is sufficient if there was a design or determination to inflict great bodily harm formed in the mind of the slayer at the moment before or at the same time of the fatal blow or shot.
"If an assault is made upon a person, not with the intent of killing him but with the specific intent of inflicting great bodily harm upon him and death is caused by such assault, then the crime is second degree murder."
The defense asserts that the trial judge committed serious error because, although he defined specific intent, the definition was so separated from his other references to second degree murder that confusion in the minds of the jury was the consequence. Aside from the quoted charge, during his instructions to the jury, the trial judge made other efforts, as the result of defense objections, to impress upon the jury the need to find specific intent in order to convict for second degree murder.
A reading of the entire charge, without isolating specific statements as defense counsel urges, satisfies the Court that the charge was valid, appropriate and correct.
There is no merit in this bill.
Assignment of error number ten is based upon the failure of the trial judge to assign reasons for his denial of the defense *192 motion for a new trial. In addition to reasserting the contentions in the assignments of error already considered in this opinion, the motion alleges that the testimony and evidence fail to prove the crime of second degree murder because there is no evidence of specific intent. In addition to the facts already mentioned in the opinion, study of the entire record satisfies the Court that there was some evidence of specific intent which could support the jury verdict.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON and CALOGERO, JJ., concur.
ON APPLICATION FOR REHEARING
PER CURIAM.
In his application for a rehearing defendant contends that our original opinion failed to give adequate reasons for finding no merit in Assignment of Error No. 8. He is correct. Instead of finding that the admission of the hearsay statement was harmless error we should have held that it was properly admitted as a declaration of a co-conspirator made prior to the termination of the conspiracy. La.R.S. 15:455 reads as follows:
"Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspiractor sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established."
With regard to the requirement that the statement be made "in furtherance of the common enterprise," it is generally held that declarations which are so intimately related in time and occasion to the commission of the crime as to constitute a part of one occurrence, are admissible as part of the res gestate of the crime charged. Annotation of Cases, 4 A.L.R.3d 671, 737; McCormick on Evidence, § 267 (2d Ed.1972); Cf. State v. Hodgeson, 305 So.2d 421 (La.1975); State v. McKee, 193 La. 39, 190 So. 325 (1939).
A prima facie case of conspiracy between the defendant Brumfield, Larry Butler, and Ellison Shepard was established by the State's evidence. In the early morning hours of June 9, 1974, these three individuals first visited the picket line at the Schuylkill plant, then drove to the victim's house where the shooting occurred. After the commission of the crime they immediately returned to the Schuylkill plant, which was located in the same general vicinity, and talked with James Joseph. At this time, in defendant's presence, Shepard stated that they had just come from shooting up the victim's house, and Joseph noticed a gun he described as an "automatic" lying on the seat of their car.
James Joseph was a friend of the defendant and both were participants in the strike at the Schuylkill plant. There was evidence that the shooting arose out of activities relating to the strike. Considering the fact that Shepard's remarks were made to him immediately after the accomplishment of the crime while the three coconspirators were still together in the automobile used in the crime, we hold that his statement was properly admitted into evidence against the defendant.
Accordingly, the result reached in our original opinion is correct, and the defendant's application for rehearing is denied.
NOTES
[1] La.R.S. 15:444 provides:

"If a statute has made it a crime to do a particular act, no further proof of intent is required than that accused voluntarily did the act; and any evidence that he did not know such act to be forbidden by law is inadmissible."