**Dr. N. Judge KING, Jr. and Eugene Brown, Plaintiffs,**

v.

**COUNTY OF NASSAU, Nassau Community College, George F. Chambers, President, Board of Trustees of Nassau Community College and Harold Bobroff, Chairman of the Board of Trustees of Nassau Community College, Defendants.**

**No. CV 78–0296.**

United States District Court, E.D. New York.

Feb. 28, 1984.

Meiselman, Boland, Reilly & Pittoni by M. John Pittoni, Mineola, N.Y., for plaintiffs.

Edward G. McCabe, Nassau County Atty. by Edward O'Brien, Mineola, N.Y., for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

### I. INTRODUCTION

In this action plaintiffs, both of whom are black, contend that they have been subjected to racial discrimination in employment by Nassau Community College, a public college, in violation of 42 U.S.C. Section 2000e et seq., 42 U.S.C. Sections 1981–1983, and the Fourteenth Amendment. The defendants are the County of Nassau, Nassau Community College, and the President, Chairman of the Board of Trustees, and Board of Trustees of the College. Plaintiffs seek damages and other relief. This memorandum concerns an appeal by plaintiffs from a ruling of United States Magistrate David F. Jordan, who sustained defendant's peremptory challenge of two black prospective jurors, and overruled plaintiffs' objection that the said challenges constituted illegal racial discrimination. We have affirmed Magistrate Jordan's ruling.

### II. FACTS

On January 27, 1984, jury selection in this case took place in Uniondale, New York, United States Magistrate David F. Jordan presiding. Magistrate Jordan's procedure for selecting a jury is as follows. First, sixteen prospective jurors are selected at random. The sixteen are then questioned by the Magistrate. The attorneys are then given an opportunity to make challenges for cause, on which the Magistrate rules. Any prospective juror successfully challenged for cause is replaced by another prospective juror selected at random, who

is in turn questioned by the Magistrate and then liable to challenge for cause. When there are no more challenges for cause, the two sides exercise peremptory challenges alternately, starting with plaintiffs, until eight prospective jurors remain. The six prospective jurors having the lowest numbered seating positions in the jury box become the jurors, and the two prospective jurors having the highest numbered seating positions in the jury box become alternates.

At the conclusion of all challenges for cause, the jury box contained fourteen whites and two blacks. The two blacks were prospective jurors number 1 and 12.

Peremptory challenges then began. First, plaintiffs challenged a white prospective juror. Next, defendants challenged a black prospective juror, number 1. Plaintiffs moved that defendants be required to demonstrate that this challenge was not based upon racial discrimination. Magistrate Jordan denied this motion. Plaintiff then challenged a white prospective juror. Defendants then challenged the remaining black prospective juror, number 12. Plaintiffs once again moved that defendants be required to demonstrate that the challenge was not based on racial discrimination. Magistrate Jordan ruled that, in light of the fact that defendants had challenged both of the black prospective jurors, defendants should present an explanation. All of the aforementioned discussion concerning alleged racial discrimination took place out of the hearing of the prospective jurors during conferences at the bench.

A hearing was then held in Magistrate Jordan's chambers. Defendants' attorney, Edward O'Brien, raised a number of points. The case had originally been tried in Brooklyn and a hung jury could not return a verdict. At that time virtually all juries in the Eastern District of New York sat in Brooklyn and were drawn from the entire district (comprising Brooklyn, Queens, Staten Island, Nassau and Suffolk). Today, cases such as this, arising in Nassau, are generally tried by a jury sitting in Uniondale and drawn solely from Nassau and Suffolk counties, areas in which blacks constitute a far smaller percentage of the population than in the district as a whole. Mr. O'Brien stated that "[o]ur investigation disclosed from documentation which I received from jurors in the case that of the six jurors that deliberated, two of them were black and the black jurors declined to vote for any reason with the white majority group and held out for several days resulting in the hung jury." Mr. O'Brien further stated:

The black jurors that are sitting on this panel, I had the opportunity to observe, in the array for about fifteen minutes prior to the time the court conducted the *voir dire*. During that time I observed that both of these jurors sat in close proximity to themselves, communicated not with themselves or with any others, while all of the other jurors in the panel had a mutuality of exchange throughout the entire courtroom, verbal exchange. There was laughter heard, there were a number of remarks heard.

The black jurors, both of them, I observed were removed physically, emotionally, from the white jurors in the case and presented, to my view, an inability to really objectively deliberate with other jurors in the case should they be selected as such.

They were reticent, they were distant, they were—I was troubled by them as I was by several of the white jurors who I have yet to challenge and will challenge as my opportunity allows.

. . . .

When the two jurors, the black jurors, number one and number twelve, were asked questions by the court, they responded to the court, they did so in a manner that I found was less than open, less than communicative and that had they been black or white I would have challenged them for that reason alone.

. . . .

I think both of us want to have an objective jury that is not going to be clouded by racial prejudice which sometimes evidences itself with a greater vi-

triolic approach by some people of certain ethnic backgrounds than of others.

. . . .

[Juror Number 1] ... lives in a black community. He evidences to my view as a person who cannot sit on a jury in this kind of case without overemphasizing the ethnic factors.

Magistrate Jordan ruled that defendants' challenges to the two black prospective jurors were valid. Magistrate Jordan took note of the recent decision in *McCray v. Abrams*, 576 F.Supp. 1244 (E.D.N.Y.1983), in which Judge Nickerson held that a prosecutor's exercise of peremptory challenges to exclude blacks solely on the basis of race would violate a black defendant's rights under the Equal Protection Clause of the Fourteenth Amendment and his Sixth Amendment right to trial by a fair and impartial jury in criminal cases (made applicable to the states by the Due Process Clause of the Fourteenth Amendment). Magistrate Jordan made the following statement:

After listening to the arguments of both counsel I believe defendants' counsel has stated a valid nondiscriminatory reason for exercising the challenges which he has.

The decision of Judge Nickerson carried to its logical conclusion, in effect, largely destroys the peremptory challenge.

His decision also gives rise to a host of close questions such as those which are brought out here today. It will be extremely difficult to preserve the right of peremptory challenge on the one hand and still require the exposition of a nondiscriminatory reason for exercising a peremptory challenge which will be acceptable to all reasonable people. If counsel are to be afforded a peremptory challenge which is still reasonably peremptory as distinguished from being arbitrary and discriminatory they must be afforded a wide degree of discretion in the manner in which they choose to exercise those challenges. Defendants' counsel has stated that in his opinion these two jurors would not be so open to the reception of evidence that he is satisfied that they would accept it at which he considers to be reasonable face value. I think this is a sufficient reason. I have doubt about the fact that a juror comes from a black neighborhood is a valid reason and I do not accept that as a basis for my ruling. If, in fact, the prior jury divided along racial lines it would seem to me to be highly problematical whether that fact is a valid reason for exercising peremptory challenges against blacks in this case and I do not base my decision on that fact.

The trial in this case is to begin on or about February 7, ten days from today. The parties are advised that any objection to a ruling made by a Magistrate must be brought to the attention of the Judge within ten days. And if an appeal is to be taken from this ruling I would ask counsel to contact Judge Wexler just as soon as they are able to do so, so that he can schedule a hearing with respect to it before the trial begins.

The case presents what I believe to be a case of first impression and therefore, I am going to ask the two jurors who have been challenged to remain with the group rather than to be excused at the end of the day, so that if my ruling should be reversed we will not have lost the jurors. So that, in fact, I will be asking ten jurors to return on Monday [February 6] and then if there is any reversal by Judge Wexler they will still be here and the last two jurors remaining will be excused; otherwise, these two jurors will be excused.

Plaintiffs promptly appealed to this Court from Magistrate Jordan's ruling. On February 6, 1984, this Court heard oral argument on the appeal, and on February 7, 1984, this Court affirmed Magistrate Jordan's ruling and ordered trial to commence February 8, 1984. On February 9, 1984, for reasons unrelated to the issues discussed in this memorandum, we declared a mistrial, and ordered that a new trial commence in May 1984.

## III. DISCUSSION

The purpose of this memorandum is to explain the affirmance of Magistrate Jordan's ruling.

■ A ruling by a Magistrate on pretrial matters such as jury selection should be affirmed unless clearly erroneous or contrary to law. 28 U.S.C. Section 636(b)(1)(A).

## A. DISCUSSION OF McCRAY

We will begin with a discussion of Judge Nickerson's decision in *McCray v. Abrams,* 576 F.Supp. 1244 (E.D.N.Y.1983). This case involved a petition for a writ of habeas corpus by a black defendant who contended that the prosecutor at his state trial had used her peremptory challenges in a racially discriminatory manner. Judge Nickerson held that "[t]he trial court should have required the prosecutor to offer some reason other than race alone for each of these challenges. The trial judge should then have determined whether any of the challenges were in fact based on race alone; if they were, the court should have quashed the venire." It should be noted that a previous trial of the petitioner had resulted in a hung jury, and that, according to the affidavit of petitioner's trial counsel, three jurors at the first trial were black, and these three alone voted to acquit. Judge Nickerson, in holding that "[i]f, as petitioner here alleges, the prosecutor at his trial exercised peremptory challenges solely on the basis of race, his sixth and fourteenth amendments rights were violated", explicitly rejected the Supreme Court's holding in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

In *Swain,* the Supreme Court stated that:

It [the peremptory challenge] is no less frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty ... Hence venireman are not always judged solely as individuals for the purpose of exercising peremptory challenges. Rather, they are challenged in light of the limited knowledge counsel has of them, which may include their group affiliations, in the context of the case to be tried.

With these considerations in mind, we cannot hold that the striking of Negroes in a particular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause. To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge. The challenge, *pro tanto,* would no longer be peremptory, each and every challenge being open to examination, either at the time of the challenge or at a hearing afterwards. The prosecutor's judgment underlying each challenge would be subject to scrutiny for reasonableness and sincerity. And a great many uses of the challenge would be banned.

In light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reason for the exercise of his challenge in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it.

380 U.S. at 220–222, 85 S.Ct. at 836–837. The Supreme Court went on to state that:

We have decided that it is permissible to insulate from inquiry the removal of

Negroes from a particular jury on the assumption that the prosecutor is acting on acceptable considerations related to the case he is trying, the particular defendant involved and particular crime charged. But when the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenge for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance. Cf. *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, [30] L.Ed. 220. In these circumstances, giving even the widest leeway to the operation of irrational but trial-related suspicions and antagonisms, it would appear that the purpose of the peremptory challenge are [sic] being perverted. If the State has not seen fit to leave a single Negro on any jury in a criminal case, the presumption protecting the prosecutor may well be overcome. Such proof might support a reasonable inference that Negroes are excluded from juries for reasons wholly unrelated to the outcome of the particular case on trial and that the peremptory system is being used to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population. These ends the peremptory challenge is not designed to facilitate or justify.

380 U.S. at 223–23, 85 S.Ct. at 837–838.

Judge Nickerson stated that application of the holding in *Swain* would require denial of the petition for a writ of habeas corpus, but that the holding may no longer be good law. Judge Nickerson noted that although the Supreme Court had denied certiorari to review the New York Court of Appeals' affirmance of petitioner's conviction, *McCray v. New York,* — U.S. —, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983), five justices—including three who voted to deny certiorari—agreed that the holding in *Swain* should be re-examined.

Judge Nickerson reasoned that the Equal Protection Clause prohibits a policy of using peremptory challenges "solely on the basis of an assumption of racial affinity in order to produce an all-white jury" in criminal cases involving a black defendant, because "[n]o compelling governmental purpose justifies a prosecutor's use of peremptory challenges solely on the basis of race." Judge Nickerson further reasoned that "[t]he right to a jury drawn from a fair cross-section of the community is rendered meaningless if the State is permitted to utilize several peremptory challenges to exclude all Negroes from the jury," quoting *McCray v. New York,* 103 S.Ct. 2438, 2442 (Marshall, J., dissenting). Judge Nickerson concluded that:

> The equal protection clause should be construed to prohibit a prosecutor's exercise of peremptory challenges to exclude blacks solely on the basis of a race in any case. If, as petitioner here alleged, the prosecutor at his trial exercised peremptory challenges solely on the basis of race, his sixth and fourteenth amendments rights were violated. The court does not decide the application of this holding to exclusion on a basis other than race, to counsel's use of peremptory challenges in civil cases, or to other questions which the facts of this case do not present.

## B. EVALUATION OF LEGITIMACY OF GROUNDS FOR CHALLENGES

### 1. UNCOMMUNICATIVENESS OF PROSPECTIVE JURORS

■ Magistrate Jordan ruled that the contention of defendants' attorney that the two black prospective jurors were uncommunicative provided a sufficient basis for defendants' peremptory challenge of such prospective jurors. Although plaintiffs' attorney has attempted to rebut defendants' contention that the two prospective jurors are uncommunicative, arguing, for example, that one of the two is a foreman in a printing plant and must therefore be communicative, we are unimpressed with this

argument. Magistrate Jordan in upholding the challenges on the ground of the uncommunicativeness of the two black prospective jurors necessarily concluded that defendants' contention that the prospective jurors are uncommunicative was not wholly frivolous in the sense of being totally lacking in a factual basis. In view of the wide and indeed unlimited discretion that parties traditionally exercise in making peremptory challenges, it would appear that if parties are to be called on to explain their peremptory challenges, any explanation which a Court deems adequate as a matter of *law* should be treated as having a sufficient basis in *fact* unless it appears plainly that the explanation is factually incorrect or that it is totally lacking in factual basis. It is indisputable that the allegation that the prospective jurors were uncommunicative would, if true, constitute a constitutionally acceptable explanation for a peremptory challenge as a matter of law under any imaginable theory of law. Since Magistrate Jordan had ample opportunity to observe the prospective jurors and concluded that the contention that the blacks were uncommunicative was not totally without factual basis, and since nothing presented to this Court suggests that Magistrate Jordan's ruling was "clearly erroneous," Magistrate Jordan's ruling was affirmed pursuant to 28 U.S.C. Section 636(b)(1)(A).

### 2. RACE–RELATED GROUNDS FOR CHALLENGES

Since we have concluded that defendants' peremptory challenges were justifiable on grounds wholly unrelated to race, it is not absolutely necessary for us to consider the legitimacy of those grounds afforded for the challenge which are related to race. Nevertheless, we feel that it is appropriate to discuss the legitimacy of those grounds offered for the challenges that are related to race, especially since the issue may surface again at any future jury selection in this case.

■ Judge Nickerson's decision in *McCray* involved a criminal case. We deal here with a civil case. Traditionally, the law places far more concern on the interests of a defendant in a criminal case than on the interests of either party in a civil case. Hence it would not be wholly implausible for us to argue that Judge Nickerson's decision is inapplicable to the instant case. Such an argument would be considerably weakened by the fact that here, as in *McCray*, the party alleged to have made peremptory challenges on an illegal racially discriminatory basis is a governmental entity. This is because the Equal Protection Clause of the Fourteenth Amendment, applicable to the states, and the corresponding equal protection component of the Due Process Clause of the Fifth Amendment applicable to the federal government, *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), can only be violated by governmental action, and because it is much easier to argue that a peremptory challenge made by a governmental entity constitutes governmental action than it is to argue that a peremptory challenge made by a private party and merely accepted by a court constitutes governmental action. The argument is further weakened by the fact that here, as in *McCray*, a constitutional right to a jury trial is involved. Although *McCray* involved the Sixth Amendment right to trial by jury in criminal cases, made applicable to the States by the Fourteenth Amendment, *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), whereas the instant case involved the Seventh Amendment right to trial by jury in certain civil cases in federal court, *see Sisco v. J.S. Alberici Const. Co., Inc.*, 655 F.2d 146 (8th Cir. 1981), *cert. denied*, 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982), it is nevertheless difficult to argue that the content of the right to trial by jury in criminal cases differs *radically* from the content of the right to trial by jury in civil cases in federal court.

■ We are persuaded that the *Swain* decision is the correct statement of the law and is applicable to both criminal and civil cases, regardless of whether the perempto-

ry challenge is made by a governmental entity or by a private party. While we applaud Judge Nickerson's bold willingness to confront difficult issues, we respectfully disagree with his decision.

In *Swain*, the Supreme Court explained that the use of peremptory challenges tends to promote fairness by eliminating "extremes of partiality on both sides", and also to promote the appearance of fairness by allowing a party to eliminate those prospective jurors that the party believes are most likely to be partial to the opposing party. 380 U.S. at 219, 85 S.Ct. at 835. The only situation in which the Court envisioned the use of racial considerations would be illegal was that in which the state uses peremptory challenges "for reasons wholly unrelated to the outcome of the particular case on trial," 380 U.S. at 224, 85 S.Ct. at 838. In other words, under *Swain*, state use of racial criteria in making peremptory challenges is illegal only when the state, acting on a policy of white dominance, attempts to keep blacks off *all* juries, even in cases where the state actually weakens its own chances of winning by keeping blacks off the jury. So long as the state's goal is simply to maximize its own chances of winning, the state does not act illegally.

Whatever one's view of the *Swain* decision, it must at least be conceded that *Swain* proposes a clear rule regarding what criteria may be used in making peremptory challenges. Specifically, *Swain* holds that a party may use peremptory challenges to maximize the party's chances of winning.

By contrast, the *McCray* decision does not appear to propose such a clear rule. The decision states that the prosecutor may not make a challenge "solely on the basis of race" or "solely on the basis of an assumption of racial affinity", even if the prosecutor believes that such a challenge will increase the state's chances of winning, and even if the prosecutor's belief has been empirically confirmed by jury voting along racial lines at a previous trial. Indeed, it is in part precisely because such

a challenge will increase the state's chances of winning, to an extent thought inequitable by the court in *McCray*, that the court held that such a challenge is illegal. This means that either a party's goal of maximizing his own chances of winning is not a legitimate one, or else that the goal, although legitimate in general, does not justify the use of racial classifications. Both interpretations create difficulties.

If a party may not legitimately pursue the goal of maximizing his own chances of winning, then what goal may he legitimately pursue? Of course, if it is legitimate for parties to selfishly pursue their own interests in making peremptory challenges, this legitimacy must stem from some advantage to society produced, even if unintentionally, by the behavior of the parties, just as the American free enterprise system is advocated mainly on the ground that the self-serving behavior of each individual in seeking his own economic advantage results in an efficient system of production and distribution for society at large. The Supreme Court has explained that the selfish behavior of parties in making peremptory challenges tends to promote fairness and the appearance of fairness. *Swain*, 380 U.S. at 219–20, 85 S.Ct. at 835–836. We would add that, by eliminating those prospective jurors thought most likely to vote for the plaintiff and those thought most likely to vote for the defendant, the use of peremptory challenges increases the probability that the jury will be able to reach a unanimous verdict and thereby obviate the necessity for a retrial. Of course, there is no guarantee that in any given case the selfish use of peremptory challenges will in fact promote these societal goals. However, it may be argued that the selfish use of peremptory challenges tends in general to promote societal goals, and that its use should therefore be permitted in every individual case, rather than developing a complex set of *ad hoc* exceptions.

If the goal of maximizing one's own chances is legitimate but does not justify the use of racial classifications, what classi-

fications does it justify the use of? Under the Equal Protection Clause, racial classifications are ordinarily deemed suspect, *Korematsu v. United States,* 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944), in part at least because the use of such classifications generally bears little relation to the achievement of goals regarded as legitimate. The use of racial classifications in jury challenges, however, would appear to have a strong relation to the accomplishment of a party's goal of maximizing his own chances of winning, where, as here, the parties on one side are black. Indeed, race would appear as relevant, or even more relevant to the goal than most other forms of classification which spring readily to mind. This is especially so where, as here, the suit itself concerns racial discrimination. A black prospective juror, having himself experienced actual racial discrimination, and perhaps having also at times wrongly imagined himself to be experiencing racial discrimination, might perhaps be less capable of evaluating a discrimination suit objectively than the average person, though no person can evaluate any case in a completely objective fashion. Further, it must be recalled that the aim of a party making a peremptory challenge, assuming that it is legitimate in general for a party to act selfishly, is not only to eliminate prospective jurors who are unobjective and biased against the party, but also to eliminate as far as possible those jurors who are objective, in favor of those who are unobjective and biased in favor of the party but whose unobjectivity is not sufficiently strong or sufficiently apparent to permit their successful challenge by the other par-

ty for cause. That the defendants' decision to challenge the black prospective jurors was "reasonable" at least in the limited sense that it fostered the defendants' own interest, is confirmed (if any confirmation is needed) by the fact that here (as in *McCray*) there is reason to believe that the first jury split along racial lines.

Although *McCray* dealt specifically only with racial classification, it is clear that the decision's impact cannot be limited exclusively to racial classification.[1] Once we ban the use of race, we are inevitably led to ban the use of ethnicity and religion, and, almost as inevitably led to ban the use of gender. From there we may progress to the view that the use of virtually any identifiable attribute an individual may possess is illegal. Long before we reached this point, however, we will have completely abolished the system of peremptory challenges as it exists today and as it has existed in the past. As the Supreme Court noted in *Swain,* lawyers routinely base peremptory challenges upon "race, religion, nationality, occupation or affiliations", 380 U.S. at 220, 85 S.Ct. at 836.

Even assuming the existence of a clear theoretical rule regarding what types of peremptory challenges are legal, enormous difficulties would arise from any attempt to implement such a rule in practice. A great deal of time, effort and expense would be necessary to attempt to determine whether any given peremptory challenge is legal. Any such determination would entail the extremely difficult task of assessing the internal motives of the attorneys. It might also require an inquiry by the Court into the ethnic or religious backgrounds of pro-

**1.** As Judge Nickerson noted in his decision, some state courts have already declared that peremptory challenges based on many grounds other than race are illegal. In *People v. Wheeler,* 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978), the court declared that "the use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to trial by a jury drawn from a representative cross-section of the community" under the California Constitution and the Sixth Amendment. 148 Cal.Rptr. at 902–903, 583 P.2d at 761–762. The court specifically mentioned religious and ethnic classifications. In *Com-*

*monwealth v. Soares,* 377 Mass. 461, 387 N.E.2d 499, *cert. denied,* 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979), the court, relying on state law, proscribed "exercise of peremptory challenges to exclude members of discrete groups, solely on the basis of bias presumed to derive from that individual's membership in the group", 387 N.E.2d at 516. The court specifically condemned challenges based on "sex, race, color, creed or national origin." *See also State v. Crespin,* 94 N.M. 486, 612 P.2d 716 (1980) (declaring constitutional right, apparently on state grounds, but not specifying whether groups other than racial groups are protected).

spective jurors, thereby promoting the very emphasis on such factors which the rule seeks to avoid. These difficulties could only be mitigated by the establishment of an artificially high presumption that an attorney making a peremptory challenge is in fact complying with the rule. Most important of all, attorneys, confronted with a rule completely or partially restricting their right to act with the internal motive of helping their clients when making peremptory challenges, will be under enormous pressure to lie regarding their motives. Such a rule will foster hypocrisy and disrespect for our system of justice. Indeed, it is even possible that an attorney may lie to himself in an effort to convince himself that his motives are legal. Rather than introduce such a rule, it would be infinitely preferable if the entire system of peremptory challenges were abolished; so long, however, as we retain a system of peremptory challenges, we should maintain the current practice of not requiring any explanation for such challenges. If, however, we were forced to adopt a system in which explanations are required for peremptory challenges, we would, as a last resort, adopt a heavy presumption that an attorney making a challenge is doing so for permissible reasons.

■ We are aware of the fact that there are serious objections to the use of peremptory challenges based on race. For one thing, such challenges do not appear to promote the kind of compelling state interest we ordinarily demand of a racial classification under the Equal Protection Clause. While the use of peremptory challenges has several advantages, *Swain*, 380 U.S. at 219, 85 S.Ct. at 835, it is quite possible to imagine an acceptable judicial system in which no peremptory challenges whatsoever are allowed. Indeed, the Supreme Court has stated that "[t]here is nothing in the Constitution of the United States which requires the Congress [or the States] to grant peremptory challenges", *Swain*, 380 U.S. at 219, 85 S.Ct. at 835 (quoting *Stilson v. United States*, 250 U.S. 583, 586, 40 S.Ct. 28, 29–30, 63 L.Ed. 1154). However, the standards ordinarily applied under the

Equal Protection Clause are not fully applicable to peremptory challenges. *Swain*, 380 U.S. at 221, 85 S.Ct. at 836. We see a number of reasons for this.

First, peremptory challenges based on racial classifications do not "stigmatize" people in the way that racial classifications are ordinarily thought to stigmatize people. A party who challenges a black prospective juror in a case where the opposing party is black does so not because he regards either the prospective juror or the opposing party as inferior to whites, but because he believes that the black prospective juror is less likely to vote in his favor than the average white person.

Second, a peremptory challenge of a prospective juror based on race does not significantly harm the prospective juror, although it may significantly harm the opposing party.

Third, although a party's peremptory challenge of a black prospective juror in a case in which the opposing party is black may significantly harm the opposing party, the harm to the opposing party is not the kind of harm which the Equal Protection Clause is primarily designed to guard against. Such a peremptory challenge discriminates against the black opposing party *qua* black only in the limited sense that, since blacks are a minority in most areas of the country, a system allowing parties to make peremptory challenges on the basis of racial criteria tends to favor whites over blacks, since it is easier to "purge" a jury of blacks than to purge it of whites. The Equal Protection Clause, however, does not protect blacks against all disadvantages arising from the fact that blacks constitute a minority group. For example, the American system of political representation, under which, in general, geographical districts each elect a single representative in a "winner take all" election, may make it difficult for the black minority to obtain representation in legislative bodies proportionate to the minority's numbers in the population. Yet this system is generally regarded as constitutional. Even if blacks

were guaranteed proportionate representation in legislative bodies, blacks would still be at a disadvantage in the sense that the white majority in the legislative body might outvote the black minority often enough to prevent the black minority from achieving a proportionate share of decisions relatively favorable to the minority. Even if the black minority was guaranteed a proportionate share of decisions relatively favorable to the minority, the blacks would still be at a disadvantage in the sense that the proportion of decisions relatively favorable to whites would still exceed the proportion of decisions relatively favorable to blacks. The pursuit of absolute equality is illusory, because a change which increases equality in one respect may decrease equality in another respect. The Equal Protection Clause was enacted at a time when many states had laws providing that blacks could not exercise certain rights under any circumstances. The Equal Protection Clause, therefore, is primarily designed to protect blacks against direct racial classifications, and not to protect blacks against disadvantages which stem merely incidentally from the fact that blacks are a minority. A peremptory challenge of a black prospective juror where the opposing party is black constitutes a direct racial classification against the prospective juror, but does not significantly harm the prospective juror; such a challenge may significantly harm the opposing party, but does not constitute a direct racial classification against the opposing party.

Judge Nickerson has stated that permitting a party to exclude all blacks from a jury by peremptory challenges renders meaningless the right to a venire drawn from a cross-section of the community. *See Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). We would suggest that the peremptory challenge reduces the value of the right without rendering the right meaningless. If a venire is drawn from a cross-section of the community, a white party seeking to maximize his chances of defeating a black party may be forced to use some of his peremptory challenges to remove blacks from the jury. If

blacks had illegally been excluded from the venire itself, the white party's peremptory challenges would then be available to remove from the jury whites who would otherwise have served on the jury, whites whom the white party believes are less likely than the average white to vote for the white party. Consequently, the black party benefits from the ban on racial discrimination in the selection of the venire, even if the black party might benefit still more if peremptory challenges were entirely eliminated. It should be noted that the disadvantages of black federal criminal defendants are mitigated by the fact that federal criminal defendants receive more peremptory challenges than the prosecution.

It may well be that the system of peremptory challenges as it exists today is less advantageous to blacks than a system without any peremptory challenges would be. No system is perfect; every imaginable system is inequitable in some respect when compared with another system. If society regards the existing system as unfair to blacks, society may choose to adopt a system without peremptory challenges, a system with inequities of its own. So long as we retain a system of peremptory challenges, however, we believe that any attempt, however well-intentioned, to dilute the concept of the peremptory challenge by introducing a requirement that certain challenges be explained will create more harm than good.

■ Generally speaking, a District Judge will follow a precedent set by another District Judge of the same court. Here, however, we have a situation in which a District Judge has explicitly rejected a precedent of the Supreme Court. Under the circumstances, we believe that we are not bound by the District Judge's precedent. We believe that we are not barred from following, and indeed may perhaps be required to follow, the precedent set by the Supreme Court and explicitly rejected by the District Judge. Although a precedent set by a District Judge of the same court is entitled to great weight, and although the

opinions of those members of the Supreme Court who have urged that the Court re-examine its ruling in *Swain* are also entitled to great weight, we believe that a precedent set by the Supreme Court is entitled to still more weight, until such time as the Supreme Court, upon adjudicating a case on the merits, overturns its own precedent.

We therefore hold that, in a federal proceeding, a party making a peremptory challenge should not be required to give any explanation for such challenge, even though the party may be employing racial criteria to foster his own interests, and even though the party is a governmental entity, regardless of whether the proceeding is civil or criminal in nature, as a challenge based on such grounds does not violate the Due Process Clause of the Fifth Amendment, the Sixth Amendment (applicable in criminal cases), the Seventh Amendment (applicable in certain civil cases), or the Equal Protection Clause of the Fourteenth Amendment (applicable to parties which are state governmental entities). Further we hold that a challenge based on such grounds in a state proceeding would not be violative of the Sixth Amendment (made applicable to state criminal proceedings by the Due Process Clause of the Fourteenth Amendment) or the Equal Protection Clause of the Fourteenth Amendment.

This holding constitutes an independent basis for the affirmance of Magistrate Jordan's ruling which sustained defendants' challenge of two black prospective jurors.

## IV. CONCLUSION

For the above reasons, on February 7, 1984, we affirmed Magistrate Jordan's ruling, and sustained defendants' peremptory challenge of two black prospective jurors. For reasons unrelated to the issues discussed in this memorandum, we declared a mistrial on February 9, 1984, and ordered that a new trial commence in May, 1984.

It is therefore

ORDERED, that at any future jury selection in this case, no party shall be required to give an explanation for any peremptory challenge.

SO ORDERED.