No. 83–6809. THOMPSON *v.* UNITED STATES. C. A. 8th Cir. Certiorari denied.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

Once again this Court is confronted with a challenge to the constitutionality of the Government's use of peremptory challenges to exclude potential jurors in a criminal trial because of their race. See *Swain* v. *Alabama*, 380 U. S. 202, 221 (1965) ("[W]e cannot hold that the striking of Negroes in a particular case is a denial of equal protection of the laws").\* The continued vitality of *Swain* is by now a "distressingly familiar" issue to this Court. *Williams* v. *Illinois*, decided with *Dixon* v. *Illinois* and *Yates* v. *Illinois*, 466 U. S. 981, 982 (1984) (MARSHALL, J., dissenting from denial of certiorari); see *McCray* v. *New York*, decided with *Miller* v. *Illinois* and *Perry* v. *Louisiana*, 461 U. S. 961, 963 (1983) (MARSHALL, J., dissenting from denial of certiorari); *Gilliard* v. *Mississippi*, 464 U. S. 867 (1983) (MARSHALL, J., dissenting from denial of certiorari). A majority of the Court has expressed the position that this question merits plenary review. See *McCray, supra,* at 961 (opinion of STEVENS, J., joined by

---

\*Petitioner Thompson, convicted of federal counterfeiting charges, challenges his conviction on the ground that the Government used peremptory challenges to exclude five of seven Negro potential jurors. When defense counsel raised the objection at the close of *voir dire,* the Assistant United States Attorney stated on the record that she had used race as a criterion in excluding the five Negro jurors. The District Court rejected the challenge on the basis of *Swain* v. *Alabama*, 380 U. S. 202 (1965), and the Eighth Circuit affirmed with some reluctance. 730 F. 2d 82, 85 (1984).

BLACKMUN and POWELL, JJ.); *id.*, at 963 (MARSHALL, J., joined by BRENNAN, J., dissenting from denial of certiorari). The call to reconsider *Swain*, from both courts and scholars, continues unabated. It is time for this Court to face up to the issue.

JUSTICE MARSHALL has written persuasively concerning the immediate need to reconsider *Swain* in light of *Duncan* v. *Louisiana*, 391 U. S. 145 (1968), and *Taylor* v. *Louisiana*, 419 U. S. 522 (1975), which found the Sixth Amendment's jury trial guarantees applicable to the States through the Fourteenth Amendment. See *McCray* v. *New York*, *supra*, at 963 (MARSHALL, J., dissenting from denial of certiorari); *Gilliard* v. *Mississippi*, *supra*, at 867 (MARSHALL, J., dissenting from denial of certiorari). I add my voice here simply to make two points. First, however plausible the rationale of *Swain* may have seemed two decades ago, the justification for shielding peremptory challenges from equal protection scrutiny has not withstood the test of time. *Swain* thus should be reconsidered for equal protection as well as Sixth Amendment reasons. Second, the admirable intent of three of my colleagues in acknowledging the import of the issue but deferring our review "to allow the various States to serve as laboratories in which the issue receives further study," see *McCray*, *supra*, at 963 (opinion of STEVENS, J., joined by BLACKMUN and POWELL, JJ.), has spawned confusion not· clarification in the courts below.

## I

*Swain* is an anomaly, a departure from two fundamental principles of constitutional law. The first is the basic equal protection notion that government officials cannot exclude persons from juries solely because of their race. "It is well known that prejudices often exist against particular classes in the community, which sway the judgment of jurors, and which, therefore, operate in some cases to deny to persons of those classes the full enjoyment of that protection [a jury of peers] which others enjoy." *Strauder* v. *West Virginia*, 100 U. S. 303, 308–309 (1880). The second is the basic notion inherent in the "American tradition of trial by jury" that "[j]ury competence is an individual rather than a group or class matter. That fact lies at the very heart of the jury system. To disregard it is to open the door to class distinctions and discrimination which are abhorrent to the democratic ideals of trial by jury." *Thiel* v. *Southern Pacific Co.*, 328 U. S. 217, 220 (1946). Notwithstanding the force of these principles,

five Members of the Court in *Swain* (of whom I was one) held that the prosecution's right to use peremptory challenges in any particular case involving a Negro defendant had to remain free of equal protection scrutiny. After acknowledging the impressive pedigree of the peremptory challenge, we held that such challenges are frequently

> "exercised on grounds thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty. For the question a prosecutor or defense counsel must decide is not whether a juror of a particular race or nationality is in fact partial, but whether one from a different group is less likely to be. . . . Hence veniremen are not always judged solely as individuals for the purpose of exercising peremptory challenges. Rather they are challenged in light of the limited knowledge counsel has of them, which may include their group affiliations . . . .
>
> "With these considerations in mind, we cannot hold that the striking of Negroes in a particular case is a denial of equal protection of the laws." 380 U. S., at 220–221 (footnotes omitted).

With the hindsight that two decades affords, it is apparent to me that *Swain*'s reasoning was misconceived. Stripped of its historical embellishments, *Swain* holds that the State may presume in exercising peremptory challenges that only white jurors will be sufficiently impartial to try a Negro defendant fairly. In other words, *Swain* authorizes the presumption that a Negro juror will be partial to a Negro defendant simply because both belong to the same race. Implicit in such a presumption is profound disrespect for the ability of individual Negro jurors to judge impartially. It is the race of the juror, and nothing more, that gives rise to the doubt in the mind of the prosecutor. Whatever the justification for permitting the idiosyncratic use of peremptory challenges in the run of cases, that justification ought not extend to permit the government to make use of an unfounded racial presumption that disparages Negroes in this way. Cf. *Palmore* v. *Sidoti*, 466 U. S. 429, 432 (1984) ("Classifying persons according to their race is more likely to reflect racial prejudice than legitimate public concerns; the race, not the person, dictates the category").

## II

In *McCray* v. *New York*, 461 U. S. 961 (1983), five Members of the Court suggested that *Swain* should be reconsidered. Three of these five went on to suggest a preference for deferring review to permit experimentation in the state courts, presumably in a state constitutional law context, regarding how allegations of race-based use of peremptory challenges should be raised and considered. The decision to defer review has not produced the desired *state-law* experimentation in the state courts. See *Gilliard* v. *Mississippi*, 464 U. S., at 870–871 (MARSHALL, J., dissenting from denial of certiorari). Instead it has thrown the status of *Swain* as a matter of federal constitutional law into considerable doubt in the lower courts. Some courts appear to have read our opinions in *McCray* as an invitation to depart from *Swain* as a matter of federal law, *e. g.*, *McCray* v. *Abrams*, 576 F. Supp. 1244 (EDNY 1983), while others have declined to depart from *Swain*, *e. g.*, *King* v. *County of Nassau*, 581 F. Supp. 493 (EDNY 1984). Even the courts reaffirming *Swain* have felt compelled to reconsider it at length in light of this Court's *McCray* decision. *King* v. *County of Nassau*, *supra*; see also *People* v. *Charles*, 61 N. Y. 2d 321, 462 N. E. 2d 118 (1984). The piecemeal erosion of *Swain*—whose rule, if without other virtue, was at least clear—will continue until this Court acts to resolve the uncertainty.

## III

The time is ripe to reconsider *Swain*. The erosion of *Swain*'s constitutional legitimacy and the dearth of creative state-law development counsel against further delay in resolving this important question. Declining to review this case, we let stand a conviction in which we know that the prosecuting attorney excluded individual potential jurors because they were Negroes. This official use of disparaging racial classification is so at odds with our most basic understandings of equal protection that we should not sanction it in this case or any other. I think we have a responsibility to resolve this important and recurring constitutional issue, and I respectfully dissent from this Court's refusal to do so.