Jerome Alexander **MARKS** aka
Winiford Jerome Marks,
Appellant,

v.

The **STATE** of Texas, Appellee.

No. 09 86 067 CR.

Court of Appeals of Texas,
Beaumont.

Oct. 29, 1986.

---

Deborah Stanton Burke, Beaumont, for appellant.

John R. DeWitt, Asst. Crim. Dist. Atty., Beaumont, for appellee.

## OPINION

BURGESS, Justice.

Appellant was convicted by a jury of delivery of pentazocine, a controlled substance. At the punishment stage, the jury found that appellant had previously been convicted of a felony and assessed his punishment at ten years confinement in the Texas Department of Corrections. Appellant urges four grounds of error.

The first ground of error alleges that the state's exercise of its peremptory challenges violated his rights to a jury drawn from a cross-section of the community and equal protection of the laws under the Sixth and Fourteenth Amendments of the U.S. Constitution, respectively. After voir dire of the panel and the exercise of peremptory challenges by the parties, appellant's counsel objected to the use of the state's peremptory challenges alleging that they were made on the basis of race and were not trial related. The prosecutor maintained that the challenges were made on the basis of age and occupation. It is undisputed that the state's ten challenges were used against ten black venire persons. Even so, two blacks remained on the jury.

Appellant's argument is primarily based upon *Batson v. Kentucky*, 476 U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We initially confront whether to apply *Batson* retroactively since this case was tried the 15th and 16th of January, 1986 and *Batson* not delivered until April 30, 1986. We decide it should not be so applied. We reach this conclusion based partially upon Mr. Justice Powell's following statement:

> We decline, however, to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges.[24]

---

[24] In light of the variety of jury selection practices followed in our state and federal trial courts, we make no attempt to instruct these courts how best to implement our holding today. For the same reason, we express no view

on whether it is more appropriate in a particular case, upon a finding of discrimination against black jurors, for the trial court to discharge the venire and select a new jury from a panel not previously associated with the case, see *Booker v. Jabe,* 775 F2d, [762] at 773, or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire, see *United States v. Robinson,* 421 FSupp 467, 474 (Conn 1976), mandamus granted subnom. *United States v. Newman,* 549 F2d 240 (CA2 1977). *Id.,* 476 U.S. at ——, 106 S.Ct. at 1724, 90 L.Ed.2d at 89–90.

This statement, with the footnote, seems to indicate that the holding will be applied prospectively.

Further, Justices White and O'Conner, in separate concurring opinions, explicitly state that the decision does not apply retroactively. In addition, Chief Justice Burger, in a dissent joined by Justice Rehnquist, holds that it should not apply retroactively. Because some higher court might disagree with our conclusion, we, nevertheless, consider the merits of the ground of error.

The initial consideration is whether or not appellant established a prima facie case under *Batson:*

> [A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group, *Castaneda v. Partida, supra,* [430 U.S. 482] at 494, 51 L Ed 2d 498, 97 S Ct 1272 [at 1280], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' *Avery v. Georgia, supra,* [345 U.S. 559] at 562, 97 L Ed 1244, 73 S Ct 891 [at 892]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

> In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.

*Id.,* 476 U.S. at —— – ——, 106 S.Ct. at 1722–23, 90 L.Ed. at 87–88.

Under the facts of this case, we hold that appellant made such a showing. *Batson* explains the consequence:

> Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. *See McCray v. Abrams,* 750 F2d, [1113] at 1132; *Booker v. Jabe,* 775 F2d 762, 773 (CA6 1985), cert pending 85–1028. But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption—or his intuitive judgment—that they would be partial to the defendant because of their shared race. Cf. *Norris v. Alabama,* 294 US, [587] at

598–599, 79 L Ed 1074, 55 S Ct 579 [at 583–584]; see *Thompson v. United States,* 469 US 2024, 83 L Ed 2d 369, 105 S Ct 443 (Brennan, J., dissenting from denial of certiorari). Just as the Equal Protection Clause forbids the States to exclude black persons from the venire on the assumption that blacks as a group are unqualified to serve as jurors, *supra,* at ——, 90 L Ed 2d 80 [106 S.Ct. at 1716], so it forbids the States to strike black veniremen on the assumption that they will be biased in a particular case simply because the defendant is black. The core guarantee of equal protection, ensuring citizens that their State will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the jurors' race. Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or 'affirming his good faith in individual selections.' *Alexander v. Louisiana,* 405 US [625], at 632, 31 L Ed 2d 536, 92 S Ct 1221 [at 1226]. If these general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause 'would be but a vain and illusory requirement.' *Norris v. Alabama, supra* [294 U.S. 587] at 598, 79 L Ed 1074, 55 S Ct 579 [at 583]. The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination.

*Id.,* at —— – ——, 106 S.Ct. 1723–1724, 90 L.Ed.2d at 88–89.

Unfortunately, the participants did not fully anticipate *Batson.* As a result, the record is inconclusive as to whether the state sufficiently explained its challenges on 'neutral' grounds. It stated that it struck the following venire persons due to age and occupation:

| Challenge Number | Age | Occupation |
| --- | --- | --- |
| One | 36 | Teacher |
| Two | 50 | Employment Commission Supervisor |
| Three | 22 | Bank Secretary |
| Four | 47 | Unemployed nurse |
| Five | 37 | Billing Clerk |
| Six | 52 | Maintenance Foreman |
| Seven | 61 | Housewife/Former Nurse |
| Eight | unknown | |
| Nine | 38 | Maintenance Supervisor |
| Ten | 61 | Retired Sales Engineer |

Upon review, this explanation needs further development to show a discernible pattern as to age or occupation. This is especially so in light of the jury's profile:

| Juror Number | Age | Occupation |
| --- | --- | --- |
| One | 51 | Pipefitter |
| Two | 35 | Boilermaker |
| Three | 67 | Pipefitter |
| Four | 55 | Lawyer |
| Five | 32 | Jewelry Sales Person |
| Six | 37 | Dockman |
| Seven | 60 | Housewife |
| Eight | 50 | Secretary |
| Nine | 43 | Sales Person |
| Ten | 72 | Pipefitter |
| Eleven | 57 | Wastewater Supervisor |
| Twelve | 30 | Meatwrapper |

Once again, without further explanation, there is no perceptible criterion for exclusion based upon age and/or occupation, therefore, we cannot hold that any error occurred. At most, we could only remand, as was done in *Batson,* for a determination by the trial court of whether the prosecutor could more adequately explain his action. Because we hold *Batson* applies prospectively, however, we overrule ground of error number one.

■ Ground of error number two alleges the trial court erred in overruling the motion to quash the indictment. Appellant's motion to quash averred that the indictment was defective because it was neither signed by the grand jury foreman nor reflected having been appropriately filed in the office of the District Clerk of Jefferson County, Texas. By contrast, on appeal appellant argues he was deprived of constitutional protections because *his copy* of the indictment did not reflect such signing and filing. Two short answers dispose of this ground.

First, since the claim advanced on appeal is not the same as the one urged at trial, it

is not entitled to review. *Cravens v. State*, 687 S.W.2d 748 (Tex.Crim.App.1985). Second, even if *the original* had been unsigned, this would not invalidate the indictment. *McCullough v. State*, 425 S.W.2d 359 (Tex.Crim.App.1986). However, the original was properly signed and filed. The second ground of error is overruled.

The next ground of error complains of improper jury argument during the punishment phase of the trial. The complained of argument:

> [PROSECUTOR]: You can consider just as well the fact that when Jerome Marks was rejected by his natural parents and taken in by Frank and Earline Wiley, Mrs. Porter's statement that Earline Wiley was very happy to have a child in her home. But is Earline Wiley happy with that child today? Was Earline Wiley here to testify for her son?
>
> [DEFENSE COUNSEL]: Objection, your Honor, this is inflaming the minds of the jury.
>
> THE COURT: Overruled. A comment on people he did not call.

■ It is questionable whether the objection was specific enough to preserve the error. *See Smith v. State*, 437 S.W.2d 835 (Tex.Crim.App.1986). In any event, a party may comment on the failure of the opposing party to call a witness and infer that the absent testimony would be both material and damaging so long as he does not relate his version of the missing witness' testimony. *Fisher v. State*, 511 S.W.2d 506 (Tex.Crim.App.1974), *Kerns v. State*, 550 S.W.2d 91 (Tex.Crim.App.1977). The argument was proper. The ground of error is overruled.

■ Appellant's final ground of error alleges the evidence is insufficient to support a conviction in that the state did not prove the identity and weight of the controlled substance. The state alleged that appellant delivered less than 200 grams of pentazocine. Under this indictment, the state was not required to prove any specific amount, not even a usable amount. *Johnson v. State*, 658 S.W.2d 623 (Tex. Crim.App.1983). The chemist testified, un-equivocally, that the substance was pentazocine. He further testified that he estimated the weight of the tablet to be 4/10 gram. There was absolutely no objection to this testimony, thus nothing was preserved for review. *Griffin v. State*, 665 S.W.2d 762 (Tex.Crim.App.1983). This final ground of error is overruled.

The judgment of the trial court is affirmed.

AFFIRMED.