505 So.2d 747 (1987)
STATE of Louisiana, Appellee,
v.
Michael J. MIMS, Appellant.
No. 18358-KA.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1987.
*748 Bobby L. Culpepper, Jonesboro, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, John C. Blake, Dist. Atty., Walter E. May, Jr., Asst. Dist. Atty., Jonesboro, for appellee.
Before FRED W. JONES, JR., NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
The defendant, Michael J. Mims, was charged with one count of distribution of marijuana and one count of possession of marijuana with intent to distribute, violations of LSA-R.S. 40:966. The defendant was tried before a jury and was convicted as charged. The trial court sentenced the defendant to the maximum sentence under each count, ten years at hard labor and a fine of $15,000.00, and ordered that the sentences be served consecutively. On each count, the defendant was also ordered to serve an additional prison term of one year in default of payment of the fine. The defendant appeals his convictions and sentences, urging numerous assignments of error. For the following reasons, we remand the case to the trial court for further proceedings.
Because this case is to be remanded to the trial court for a hearing mandated by the contentions raised by assignment of error number six, a full recitation of the background facts of the case is not required. Briefly stated, however, the record reveals that based upon information initially provided to law enforcement officers by one Glen Jackson, officers of the Jackson Parish Sheriff's Department began an investigation of the defendant, Michael J. Mims. During the course of the investigation, Glen Jackson made a controlled buy of a quantity of marijuana from Michael J. Mims at Mims' store in East Hodge, Louisiana, on November 23, 1984. During the course of this transaction, Mims advised Jackson that he was in possession of more marijuana which was located in his mobile home located adjacent to Mims' store.
Based upon the information obtained during the investigation and as a result of the controlled marijuana buy made by Jackson, the officers obtained a search warrant for the search of Mims' residence and the *749 store. The warrant was issued by a district court judge and during the early morning hours of November 24, 1984, the officers, accompanied by the Chief of Police of East Hodge, went to Mims' residence. Upon being admitted to the mobile home by Mims, a search was conducted and the officers recovered approximately 1.7 pounds of marijuana, as well as other evidence. Mims' store was also searched and additional marijuana was recovered.
The defendant was charged by bill of information with one count of distribution of marijuana arising from the transaction in the store on November 23, 1984, and one count of possession of marijuana with intent to distribute in connection with the marijuana found at his residence and in the store.
Counsel for the defendant filed numerous pre-trial motions. On February 28, 1985, a motion to suppress was filed on behalf of the defendant. A judgment was signed by the trial court on April 19, 1985, denying that motion to suppress. On September 11, 1985, a motion to quash the information for misjoinder of offenses was filed. Shortly thereafter, another motion to suppress was filed. The trial court minutes indicate both these motions were denied by the trial court on September 16, 1985 and the trial on the merits commenced immediately thereafter. However, a mistrial was declared and a new trial date was obtained.
The present trial commenced on November 18, 1985. The defendant was tried before a jury and found guilty as charged. The defendant now appeals his convictions and sentences.
The defendant relies upon numerous assignments of error, however, our decision on assignments four and six make a consideration of the other assignments unnecessary.

ASSIGNMENTS 4 & 6
In assignment of error six, the defendant claims the trial court erred in failing to grant a mistrial because of a pattern of racial discrimination in jury selection shown by the empaneling of an all-white jury. Although there were four prospective black jurors in the jury venire, one was excused by the court and three were excused by the State through the use of peremptory challenges. For the following reasons, we find that the defendant has made a prima facie showing of racial discrimination. The State is now required to come forward with a neutral explanation for challenging prospective black jurors.
In Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the United States Supreme Court was required to decide whether a black defendant was denied equal protection by the State's exercise of peremptory challenges to exclude members of his race from the jury. In State v. Ford, 489 So.2d 1250 (La.1986)[1] the Louisiana Supreme Court set forth the manner in which this rule was to be applied:
This court continues to adhere to the standard established in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), realizing that the defendant is saddled with a difficult burden. State v. Eames, 365 So.2d 1361, 1367 (La.1978). The defendant must show systematic exclusion of blacks from juries over a period of time. State v. Hayes, 414 So.2d 717 (La.1982); State v. Edwards, 406 So.2d 1331 (La.1981). The defendant in this case has not shown a systematic exclusion of blacks, nor a long-standing policy of the office of the district attorney to exclude black jurors. Without such a showing of systematic exclusion, the state is entitled to exercise its peremptory challenges as it chooses. State v. Berry, 391 So.2d 406 (La.1980). State v. Williams, 445 So.2d 1171, 1177 (La.1984).
We are not prepared to depart from this standard, whether defendant brings his claim under the Sixth Amendment or the Fourteenth.
*750 Subsequently, the United States Supreme Court, in Batson v. Kentucky, 476 U.S. ___, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), stated that this interpretation of Swain placed on a defendant a crippling burden of proof, making a prosecutor's peremptory challenges largely immune from constitutional scrutiny. The court announced new criteria for establishing constitutional infringement upon a defendant's rights by the racial makeup of a jury.
In Batson, the United States Supreme Court stated that to establish a prima facie case of purposeful discrimination in selection of the petit jury,
T]he defendant first must show that he is a member of a cognizable racial group, Castaneda v. Partida, supra, 430 U.S. [482], at 494, 97 S.Ct. [1272] at 1280 [51 L.Ed.2d 498], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Avery v. Georgia, supra, 345 U.S. [559], at 562, 73 S.Ct. [891] at 892 [97 L.Ed.2d 1244]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.
In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative.
Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors.
Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. McCray v. Abrams, 750 F.2d [1113], at 1132; Booker v. Jabe, 775 F.2d 762, 773 (CA6 1985), cert. pending 85-1028. But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumptionor his intuitive judgment that they would be partial to the defendant because of their shared race. Cf. Norris v. Alabama, 294 U.S. [587], at 598-599, 55 S.Ct. [579] at 583-84 [79 L.Ed.2d 1074]; see Thompson v. United States, 469 U.S. 1024, 1025, 105 S.Ct. 443, 444, 83 L.Ed.2d 369 (BRENNAN, J., dissenting from the denial of certiorari).
In State v. Ford, supra, the Louisiana Supreme Court declined to apply the Batson rule retroactively. In Ford, the Louisiana Supreme Court said:
We are aware of the United States Supreme Court's decision in Batson v. Kentucky, ___ U.S. ___, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). However, we do not believe that the decision was intended to apply to cases tried before it was handed down. See Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). The United States Supreme Court repeatedly denied certiorari when the issue was presented to it in recent years prior to Batson, supra. See, e.g., Thompson v. United States, 469 U.S. 1024, 105 S.Ct. 443, 83 L.Ed.2d 369 (1984); Harris v. Texas, 467 U.S. 1261, 104 S.Ct. 3556, 82 L.Ed.2d 858 (1984); Williams v. Illinois, 466 U.S. 981, 104 S.Ct. 2364, 80 L.Ed.2d 836 (1984); Gilliard v. Mississippi, 464 U.S. 867, 104 S.Ct. 40, 78 L.Ed.2d 179 (1983); McCray v. New York, 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983).
*751 However, the United States Supreme Court in the consolidated cases of Griffith v. Kentucky and Brown v. U.S., ___ U.S. ___, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), held that the rule established in Batson is retroactive and is to be applied to all cases pending on direct review and not yet final. Therefore, we must apply the criteria set forth in Batson to the facts of this case.
First, the defendant who is black, has clearly shown that he is a member of a cognizable racial group. This fact is reflected not only by the trial transcript but also by a picture of the defendant filed into evidence.
Further, the record shows that the prosecution did in fact exercise peremptory challenges to exclude black persons from the jury. Four black females were chosen from the general jury venire for voir dire examination. One was excused by the court because she was not a resident of the parish and the other three were excused by the State through the use of peremptory challenges.
To establish a prima facie case of purposeful discrimination the defendant must next show facts and relevant circumstances indicating that the prosecutor used peremptory challenges to exclude veniremen from the petit jury on the basis of race. Batson stated that relevant circumstances could include a "pattern" of strikes against black jurors included in a particular venire.
In this case, the defendant has made a showing of such a pattern by the prosecutor of excluding black veniremen from service on the petit jury. Therefore, under Batson, the defendant has made a prima facie showing of purposeful discrimination in the selection of the petit jury.
Once the defendant has made a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. At the time this case was tried, the parties were unaware of this requirement. Therefore, no such explanation was made by the prosecutor.
A similar situation was presented to the court in Batson, and the court, rather than reversing the conviction, remanded the case to the trial court to allow the prosecutor the opportunity to establish a racially neutral reason for the use of his peremptory challenges. We choose to follow the same procedure.
As in Batson, we remand this case to the trial court for a hearing and for further proceedings to allow the State an opportunity to provide an explanation for the actions taken in empaneling this jury. If the prosecutor is unable to provide a racially neutral explanation for the exercise of his peremptory challenges acceptable to the trial court, Batson requires that the defendant's convictions be set aside and a new trial granted. However, should the prosecutor provide a racially neutral explanation for the peremptory challenges, the trial court may allow the convictions to stand and the defendant may reassert his right to appeal his convictions and sentences.
Assignment of error number six and assignment of error number four both relate to claims of racial discrimination occurring in the jury selection process. In assignment of error number four, the defendant claims the trial court erred in failing to grant a mistrial because the tales jury venire, chosen at random from persons in the hallways of the courthouse after the regular jury venire was exhausted, was all-white. Although closely tied to the assignment of error just discussed, for the following reasons we find that assignment of error number four is meritless, and no hearing on this issue will be required upon remand.
LSA-C.Cr.P. Art. 532 provides that a motion to quash is the correct procedure to raise the objection that a jury venire is improperly drawn, selected or constituted.
LSA-C.Cr.P. Art. 785(D) provides that when the petit jury venire is exhausted, the trial judge may order the summoning of tales jurors from among the bystanders or persons in or about the courthouse.
It has been held that this method of selection is not per se violative of the accused's right to trial by a jury representing *752 a fair cross-section of the community. State v. Tauzier, 397 So.2d 494 (La.1981). To support a challenge made to the composition of a jury venire, the defendant must demonstrate that the State has not complied with the statutory procedures for the selection of the venire or that there has been systematic discrimination affecting a class of persons in the selection of the jury panel. State v. Drew, 360 So.2d 500 (La. 1978).
In this case, the defendant objected to the tales jury venire because all five persons chosen from the bystanders in the courthouse were white. However, defense counsel did not request an evidentiary hearing or take any steps to establish, on the record, any basis for his complaint. The defendant made no showing that statutory procedures for selection of a tales jury venire were not complied with or that the persons chosen for that venire were selected on the basis of race. Absent such a showing, the defendant has failed to carry his burden of proving that the tales jury venire was improperly drawn, selected, or constituted. Therefore, the trial court was correct in denying defendant's motion to quash the tales jury venire.
CONCLUSION
For the above stated reasons, we remand this case to the trial court for further proceedings not inconsistent with this opinion.
REMANDED.
NOTES
[1] Writs were granted in State v. Ford by the United States Supreme Court. That court vacated the decision and remanded the case to the Louisiana Supreme Court for consideration in light of Griffith v. Kentucky, infra. ___ U.S. ___, 107 S.Ct. 1272, 94 L.Ed.2d 133 (1987).