539 So.2d 1074 (1988)
Ex Parte STATE of Alabama.
(Re Odell SCALES v. STATE of Alabama).
87-866.
Supreme Court of Alabama.
September 23, 1988.
Don Siegelman, Atty. Gen., J. Randall McNeill, Asst. Atty. Gen., for petitioner.
Joe N. Lampley, Huntsville, for respondent.
SHORES, Justice.
We granted certiorari in this case because our decision in Branch v. State, 526 So.2d 609 (Ala.1987) leaves unanswered the question of whether all cases raising a Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), issue must be remanded for a hearing under the procedure formulated in Branch. We agree with the dissenting opinion of Judge Bowen that the answer is in the negative and that whether such a hearing must be held must be decided on a case-by-case basis.
In this case, the record indicates that the trial judge understood, as well as anyone does, the teachings of Batson. He conducted a hearing, and the prosecutor articulated his reasons for exercising his peremptory strikes to exclude the four blacks on the venire. He stated that he thought that the first was slow in responding to questions put to the venire, and he questioned her ability to understand the State's case against the defendant, which involved complex issues. The trial judge indicated that he, too, noticed these characteristics in this person. The second was struck, according to the explanation offered by the prosecutor, because she was approximately the same age as the defendant and was similar to her in appearance and background. These characteristics gave the prosecutor a reasonable basis for intuitively concluding that this prospective juror might be sympathetic to the defendant. The third juror stricken had a prior arrest record and had had "involvement with the *1075 law," and the final person eliminated had the same employer as the defendant and worked with a person who was scheduled to be a witness for the State.
The prosecutor explained that the facts led him to doubt whether these jurors would be fair to the State. Defense counsel noted the association of the juror with the State's witness (the fourth strike) which seemed to him to indicate that the juror would be more inclined to favor the State's position. The prosecutor responded that he was uncertain how her association with the State's witness would affect the juror.
In Batson the Supreme Court did not eliminate peremptory strikes altogether. It simply said that such strikes must not be used to discriminate on a racial basis. We appreciate that it is impossible to know what is in the mind of another person, and that it is possible that, in stating his reasons for striking a black member of the venire, a prosecutor may give a reason that is not the true reason, but we are convinced that the trial judges in our system are in a much better position than appellate judges to decide whether the truth has been stated.
In this case, the reasons given by the prosecutor for using his strikes to eliminate these four people were facially race neutral. The trial judge found them to be credible. No more is required under Batson, and the procedure adopted by the trial court, although this case was tried before Branch was decided, comports with the criteria established in Branch.
We hold that Branch does not require a new hearing in all cases where a Batson issue was preserved. Where the trial court, as it did in this case, complies with the Batson mandate, a second hearing is not required by Branch. Ex Parte Shelton, 521 So.2d 1038 (Ala.1988).
The judgment of the Court of Criminal Appeals, 539 So.2d 1069, is reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and ALMON, BEATTY, HOUSTON and STEAGALL, JJ., concur.
MADDOX, JONES and ADAMS, JJ., dissent.
MADDOX, Justice (Dissenting.).
I agree with the holding of the majority that Ex parte Branch, 526 So.2d 609 (Ala. 1987), does not require a new hearing in every case where a Batson issue is raised, but I believe that the facts of this case show that the Court of Criminal Appeals correctly remanded this particular case in order to allow the trial court to review its determination in view of the guidelines set out in Branch.
At the time this case was tried, the Batson decision had been released, but this Court had not rendered its decision in Branch, which implemented the Batson requirements. Because of that fact, and the fact that there is a serious question in my mind as to whether the State presented sufficient race-neutral reasons for challenging prospective Jurors Ethel Hamlett and Michelle Hurt, I would affirm the judgment of the Court of Criminal Appeals, which remanded the case to the trial court. I think the State presented sufficient race-neutral reasons for challenging prospective Jurors Lizzie Hambrick and Clarence Hawkins, on the ground that Hambrick was "very slow responding to questions," which fact was also noted by the trial judge, and on the ground that Hawkins had a prior arrest and had been involved with law enforcement authorities.
The concluding statement of the trial judge is instructive: "I think the reasons stated are sufficient; however, I do make the observation that if the [prosecutor] strikes all the blacks from the jury he might do so at his peril." I believe that happened here.
The race-neutral reason given by the State for striking Juror Hamlett was that she "is approximately the same age and appearance to the defendant in the case." I cannot tell from this record whether there were other prospective jurors who were also "approximately the same age and appearance" *1076 as the defendant. In other words, were there persons on the venire with the same or similar characteristics as Hamlett who were not struck? Branch, 526 So.2d at 624.
The following transpired with regard to Juror Hurt:
"THE COURT: All right. Go ahead.
"MR. ACCARDI: As to Michelle Hurt, again, she is approximately the Defendant's age and the Defendant's appearance. Also, there are two unknown factors for the State in this case, one, she worked at A & M with Ms. Bessie Robinson and she is going to be a witness for the State. She was also employed by Sears. We have no specific information on her relationship with Sears, whether it be favorabl[e] or unfavorabl[e].
"MR. LAMPLEY: It seems to me like she would be more of a State's witness, or State's juror, than a defense juror, inasmuch as she worked around Ms. Robinson.
"MR. ACCARDI: That possibly could be, Your Honor. We have an uncertainty as to that.
"MR. LAMPLEY: She also stated, Your Honor, that she could be fair and impartial to both sides.
"THE COURT: Well, again, let me say for the record that this is new ground for me. I have read the Batson decision and I understand itwell, I can't say that I understand it. I think the Batson case is saying that you must have some other reason to exercise peremptory strikes besides the race of the juror. Is that correct? Is that a fair statement?
"MR. ACCARDI: I think that's the exact words of the Court."
In Branch, this Court articulated some guidelines that would aid in determining whether the nondiscriminatory reasons articulated by the prosecutor would pass the test of Batson:
"The burden of persuasion is initially on the party alleging discriminatory use of peremptory challenges to establish a prima facie case of discrimination. In determining whether there is a prima facie case, the court is to consider `all relevant circumstances' which could lead to an inference of discrimination. See Batson, 476 U.S. at 93, 106 S.Ct. at 1721, citing Washington v. Davis, 426 U.S. 229, 239-42, 96 S.Ct. 2040, 2047-48, 48 L.Ed.2d 597 (1976). The following are illustrative of the types of evidence that can be used to raise the inference of discrimination:
"1. Evidence that the `jurors in question share[d] only this one characteristictheir membership in the group and that in all other respects they [were] as heterogeneous as the community as a whole.' Wheeler, 22 Cal. 3d at 280, 583 P.2d at 764, 148 Cal. Rptr. at 905. For instance `it may be significant that the persons challenged, although all black, include both men and women and are a variety of ages, occupations, and social or economic conditions,' Wheeler, 22 Cal.3d at 280, 583 P.2d at 764, 148 Cal.Rptr. at 905, n. 27, indicating that race was the deciding factor.
"2. A pattern of strikes against black jurors on the particular venire; e.g., 4 of 6 peremptory challenges were used to strike black jurors. Batson, 476 U.S. at 97, 106 S.Ct. at 1723.
"3. The past conduct of the state's attorney in using peremptory challenges to strike all blacks from the jury venire. Swain [v. State of Alabama], [380 U.S. 202 at 224, 85 S.Ct. 824 at 838, 13 L.Ed.2d 759 (1965)].
"4. The type and manner of the state's attorney's questions and statements during voir dire, including nothing more than desultory voir dire. Batson, 476 U.S. at 97, 106 S.Ct. at 1723; Wheeler, 22 Cal.3d at 281, 583 P.2d at 764, 148 Cal.Rptr. at 905.
"5. The type and manner of questions directed to the challenged juror, including a lack of questions, or a lack of meaningful questions. Slappy v. State, 503 So.2d 350, 355 (Fla.Dist.Ct. App. 1987); People v. Turner, 42 Cal. 3d 711, 726 P.2d 102, 230 Cal.Rptr. 656 (1986); People v. Wheeler, 22 Cal.3d *1077 258, 281, 583 P.2d 748, 764, 148 Cal. Rptr. 890, 905 (1978).
"6. Disparate treatment of members of the jury venire with the same characteristics, or who answer a question in the same or similar manner; e.g., in Slappy, a black elementary school teacher was struck as being potentially too liberal because of his job, but a white elementary school teacher was not challenged. Slappy, 503 So.2d at 352 and 355.
"7. Disparate examination of members of the venire; e.g., in Slappy, a question designed to provoke a certain response that is likely to disqualify a juror was asked to black jurors, but not to white jurors. Slappy, 503 So.2d at 355.
"8. Circumstantial evidence of intent may be proven by disparate impact where all or most of the challenges were used to strike blacks from the jury. Batson, 476 U.S. at 93, 106 S.Ct. at 1721; Washington v. Davis, 426 U.S. at 242, 96 S.Ct. at 2049.
"9. The state used peremptory challenges to dismiss all or most black jurors. See Slappy, 503 So.2d at 354, Turner, supra.
"After a prima facie case is established, there is a presumption that the peremptory challenges were used to discriminate against black jurors. Batson, 476 U.S. at 97, 106 S.Ct. at 1723. The state then has the burden of articulating a clear, specific, and legitimate reason for the challenge which relates to the particular case to be tried, and which is nondiscriminatory. Batson, 476 U.S. at 97, 106 S.Ct. at 1723. However, this showing need not rise to the level of a challenge for cause. [Ex parte] Jackson, [516 So.2d [768] at 772 (Ala.1986)]; [State v.] Neil, 457 So.2d [481] at 487 [(Fla.1984)]; Wheeler, 22 Cal.3d at 281-82, 583 P.2d at 765, 148 Cal.Rptr. at 906.
"In addition to a clear, specific, and plausible nondiscriminatory explanation of a specific characteristic that affected the decision to challenge, the following are illustrative of the types of evidence that can be used to overcome the presumption of discrimination and show neutrality:
"1. The state challenged non-black jurors with the same or similar characteristics as the black jurors who were struck.
"2. There is no evidence of a pattern of strikes used to challenge black jurors; e.g., having a total of 6 peremptory challenges, the state used 2 to strike black jurors and 4 to strike white jurors, and there were blacks remaining on the venire.

"Batson makes it clear, however, that `[t]he State cannot meet this burden on mere general assertions that its officials did not discriminate or that they properly performed their official duties. Rather, the State must demonstrate that "permissible racially neutral selection criteria and procedures have produced the monochromatic result."` Batson, 476 U.S. at 94, 106 S.Ct. at 1721, citing Alexander v. Louisiana, 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972). Furthermore, intuitive judgment or suspicion by the prosecutor is insufficient to rebut the presumption of discrimination. Batson, 476 U.S. at 97, 106 S.Ct. at 1723. Finally, a prosecutor cannot overcome the presumption `merely by denying any discriminatory motive or "affirming his good faith in individual selections."' Batson, 476 U.S. at 98, 106 S.Ct. at 1723, citing Alexander, 405 U.S. at 632, 92 S.Ct. at 1226.
"Once the prosecutor has articulated a nondiscriminatory reason for challenging the black jurors, the other side can offer evidence showing that the reasons or explanations are merely a sham or pretext. Wheeler, 22 Cal.3d at 282, 583 P.2d at 763-64, 148 Cal.Rptr. at 906. Other than reasons that are obviously contrived, the following are illustrative of the types of evidence that can be used to show sham or pretext:
"1. The reasons given are not related to the facts of the case.
"2. There was a lack of questioning to the challenged juror, or a lack of meaningful questions.

*1078 "3. Disparate treatmentpersons with the same or similar characteristics as the challenged juror were not struck. Slappy, 503 So.2d at 354; Turner, 42 Cal.3d at 725, 726 P.2d at 110, 230 Cal.Rptr. at 664; Wheeler, 22 Cal.3d at 282, 583 P.2d at 760, 148 Cal.Rptr. at 906.
"4. Disparate examination of members of the venire; e.g., a question designed to provoke a certain response that is likely to disqualify the juror was asked to black jurors, but not to white jurors. Slappy, 503 So.2d at 355.
"5. The prosecutor, having 6 peremptory challenges, used 2 to remove the only 2 blacks remaining on the venire. Cf. Slappy, 503 So.2d at 354; Turner, 42 Cal.3d at 715, 726 P.2d at 103, 230 Cal.Rptr. at 657.
"6. `[A]n explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.' Slappy, 503 So.2d at 355. For instance, an assumption that teachers as a class are too liberal, without any specific questions having been directed to the panel or the individual juror showing the potentially liberal nature of the challenged juror."
I cannot tell from the record before me whether there were other persons on the jury venire with the same or similar characteristics as challenged jurors Hamlett and Hurt who were not struck, and there is no indication in the record before us that there was any questioning of these two jurors. The Court in Batson seemed to stress the importance of voir dire in the jury selection process when a challenge is raised:
"In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a `pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.
"Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. See McCray v. Abrams, 750 F.2d [1113], at 1132 [CA2 1984]; Booker v. Jabe, 775 F.2d 762, 773 (CA6 1985), [vacated Michigan v. Booker, 478 U.S. 1001, 106 S.Ct. 3289 [92 L.Ed.2d 705] (1986), on remand Booker v. Jabe, 801 F.2d 871 (6th Cir. 1986), cert. denied, Michigan v. Booker, [479] U.S. [1046], 107 S.Ct. 910 [93 L.Ed. 2d 860] (1987) ]. But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumptionor his intuitive judgmentthat they would be partial to the defendant because of their shared race. Cf. Norris v. Alabama, 294 U.S. [587], at 598-599, 55 S.Ct. [579], at 583-84 [79 L.Ed. 1074 (1935)], see Thompson v. United States, 469 U.S. 1024, 1026, 105 S.Ct. 443, 444, 83 L.Ed.2d 369 [1984] (BRENNAN, J., dissenting from denial of certiorari). Just as the Equal Protection Clause forbids the States to exclude black persons from the venire on the assumption that blacks as a group are unqualified to serve as jurors, supra, at 86, so it forbids the State to strike black veniremen on the assumption that they will be biased in a particular case simply because the defendant is black. The core guarantee of equal protection, ensuring citizens that their State will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors on the basis *1079 of such assumptions, which arise solely from the jurors' race. Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or `affirming his good faith in individual selections.' Alexander v. Louisiana, 405 U.S., at 632, 92 S.Ct., at 1226. If these general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause `would be but a vain and illusory requirement.' Norris v. Alabama, supra, 294 U.S. at 598, 55 S.Ct., at 583-84. The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination."
476 U.S. at 96-98, 106 S.Ct. at 1723-24.
I recognize that the trial judge, the prosecutor, and defense counsel were attempting to apply the Batson requirements without the benefit of this Court's decision in Branch, and because the Branch decision articulates, in great detail, the role of the trial judge when faced with a Batson challenge, I would remand to the trial judge, as this Court did in Branch, to allow the trial judge to determine whether the Branch guidelines were followed.
The absence of any voir dire as to Juror Hurt is especially troublesome. The State struck her because "she worked at A & M with Ms. Bessie Robinson and she is going to be a witness for the State," and because "[s]he was also employed by Sears." The prosecutor admitted that "[w]e have no specific information on her relationship with Sears, whether it be favorabl[e] or unfavorabl[e]," and when defense counsel suggested that "[i]t seems to me like she would be more of a State's ... juror, than a defense juror, inasmuch as she worked around Ms. Robinson," the prosecutor admitted, "That possibly could be, Your Honor. We have an uncertainty as to that."
This colloquy points out the efficacy of some voir dire related to the particular case on trial.
I have set out above the Branch guidelines. Because there is a serious question in my mind whether petitioner is entitled to a new trial, I think the petitioner is entitled, at least, to another hearing to allow the trial judge to determine whether the record in this case shows a compliance with Batson, as interpreted by Branch.
Consequently, I must respectfully dissent.