551 So.2d 695 (1989)
STATE of Louisiana
v.
Robert T. YOUNG, Jr.
No. KA 88 1528.
Court of Appeal of Louisiana, First Circuit.
October 11, 1989.
*696 Lewis V. Murray, III, Asst. Dist. Atty., Franklinton, William R. Campbell, Jr., New Orleans, for plaintiff-appellee.
Darrell Cvitanovich, J.J. McKernan, Baton Rouge, Sam J. Collett, Jr., Bogalusa, for defendant-appellant.
*697 Before CARTER, SAVOIE and ALFORD, JJ.
SAVOIE, Judge.
Robert T. Young was indicted by the Washington Parish grand jury for first degree murder, a violation of La.R.S. 14:30. He was tried by a jury, which convicted him of the responsive offense of second degree murder. The trial court imposed the mandatory term of life imprisonment, without benefit of probation, parole, or suspension of sentence. Defendant appealed, urging seven assignments of error, as follows:
1. The trial court erred by denying his motion to quash the jury venire on the grounds that the state exercised racially discriminatory peremptory challenges.
2. The trial court erred by finding defendant's custodial statement was freely and voluntarily given.
3. The trial court erred by restricting defense cross-examination of Officer Mike Edwards.
4. The trial court erred by finding defendant's statement was freely and voluntarily given.
5. The trial court erred by restricting defense cross-examination of Michael Johnson.
6. The trial court erred by refusing to give a special jury instruction.
7. The trial court erred by failing to grant a mistrial on the grounds that the prosecutor referred to defendant's failure to call a rebuttal witness; that the prosecutor expressed his personal opinion of the evidence; and that the prosecutor misrepresented the law of double jeopardy.
Assignments of error two, three, four, five and six were not briefed on appeal and, therefore, are considered abandoned. Uniform Rules, Courts of Appeal, Rule 2-12.4. Additionally, with regard to assignment of error number seven, defendant briefed only his claim that the court erred by failing to grant a mistrial on the grounds that the prosecutor misrepresented the law of double jeopardy. Accordingly, defendant's other allegations are considered abandoned.

FACTS
Defendant and his two co-participants, Michael "Dirty" Johnson and Gregory "Burnt" Cotton, were charged with the murder of William Provost, the night attendant at Osborne's Service Station in Bogalusa, Louisiana.[1] The victim was killed in the course of an armed robbery. A patron sought help after she found the station unattended in the early morning hours of December 19, 1985. The victim's hat was discovered in a pool of blood in the driveway of the station. His body was found the following day, several miles from the station. He had been brutally beaten and his skull crushed with a claw hammer. The station's receipts, approximately three hundred dollars, had been taken from his person.
Each of the participants gave statements to the police. Defendant claimed that he accompanied Cotton and Johnson to the service station on the night of the murder. After purchasing a small amount of gasoline, the trio noted that the victim made change from a large wad of bills from his pocket. Defendant related that the three men had been using cocaine earlier that evening, and Cotton and Johnson decided to rob the attendant in order to obtain money to buy more cocaine. Defendant claimed that Cotton first suggested that it would be necessary to murder the attendant because of a distinctive burn scar that marred his face. Defendant further claimed that he refused to participate in the offense because he knew the attendant and his family traded at the station; however, he agreed *698 to bring the others to his source after the robbery to obtain more cocaine. He told investigating officers that Cotton and Johnson dropped him off at his apartment above his family's store. When they returned, they told him that they had tricked the victim into leaning into the car, hit him in the head with a hammer, kidnapped him, and had taken him to a river where he was killed and the money taken. Defendant claimed that his participation was limited to helping the others clean Cotton's truck, providing clean clothing for them to wear, and finding cocaine for the group's consumption.
The first trial was begun on June 23, 1986. The court granted a mistrial when a state witness referred to another crime alleged to have been committed by the accused. The second trial began on October 29, 1986. During that proceeding, Michael Anthony Johnson testified that defendant killed the victim because he was concerned that the attendant recognized him from his patronage of the station. Defendant testified on his own behalf, essentially repeating the sequence of events he had related in his taped statement. He also produced an alibi witness, who claimed that he saw Cotton and Johnson leave defendant at his apartment on the night of the murder and that defendant did not leave again for several hours. The jury convicted defendant of second degree murder.

DISCRIMINATORY CHALLENGES
By assignment of error number one, defendant submits that the trial court erred by denying his motion to quash the jury venire on the ground that the state exercised its peremptory challenges in a racially discriminatory manner by excusing black prospective jurors from the panel. Citing Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), defendant claims the court erred in concluding that he had failed to establish a prima facie case of discriminatory challenges.
In Batson v. Kentucky, the United States Supreme Court reexamined the evidentiary burden placed on a criminal defendant who claims that he has been denied equal protection through the state's exercise of peremptory challenges against members of his race. To establish a prima facie case under Batson, the defendant must show that he is a member of a cognizable racial group and that the state has exercised peremptory challenges to remove members of his race from the petit jury. Additionally, under Batson, the defendant "must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of thier race." Once the defendant makes this showing, the burden shifts to the state to come forward with a neutral explanation for challenging those jurors; however, the prosecutor's explanation need not rise to a level justifying exercise of a challenge for cause. Batson, 106 S.Ct. at 1723. The ultimate burden of persuasion is on the defendant.
Defendant is black and his victim was white. Although the race of each prospective juror was not designated for the record, it appears that defendant may have been tried before an all white jury. Defendant also introduced the voir dire proceedings of the first trial to support his claim that the state showed a pattern of discriminatory selection.
During the first trial, defendant objected to the state's use of peremptory challenges against black potential jurors. After the jury was selected, he made a continuing objection for the record and moved the court to require the state to provide an explanation for the challenges. The court refused to do so, noting that the composition of the jury, which included six black jurors and a black alternate juror, illustrated that the state's challenges were not exercised discriminatorily.
During the instant proceeding, the state exercised six peremptory challenges, at least three of which were used to strike black potential jurors. In addition, other blacks were excused from the jury through challenges for cause. After the state had peremptorily challenged two of the black prospective jurors, Patricia Barnes and Roberta Sue Thomas, defendant claimed that *699 the challenge of the two women, combined with the state's challenges during the voir dire of the first trial, showed a pattern of racial discrimination; accordingly, he moved the court to require the prosecution to state reasons for its peremptory challenges. The state argued that defendant failed to establish that the jurors were stricken because of their race, but stated its readiness to provide the reasons for its challenges if necessary. The court denied defendant's motion, finding that no clear evidence had been presented that the state's exclusion of the jurors was discriminatory. Thereafter, a third black juror, Jerry Baker, was peremptorily excused by the state; defendant reurged his motion. The court noted that the state had peremptorily challenged one white prospective juror, as well as three black prospective jurors, and again found no recognizable pattern of discrimination.[2]
Defendant essentially argues that he made a prima facie case of discriminatory challenges by showing that the state excused several black prospective jurors. Citing State v. Williams, 516 So.2d 150 (La.App. 5th Cir.1987), judgment amended, 524 So.2d 746 (La.1988), and State v. Mims, 505 So.2d 747 (La.App. 2d Cir.1987), defendant claims he met or exceeded the threshold requirements set forth therein.[3] In each of those cases, the appellate court remanded the matter for a hearing in order for the state to present racially neutral explanations for its peremptory challenges upon a showing that prospective black jurors were stricken from the venire through those challenges.
In Williams, of the five black veniremen, one was excused for cause, one was accepted, and three were excused by peremptory challenges. Combined with the fact that a black defendant was accused of raping a white victim and tried by a jury that was 11/12 white, the Fifth Circuit found an inference was raised that the prosecutor used peremptory challenges to exclude veniremen from the petit jury on account of their race. State v. Williams, 516 So.2d at 153.
Four black females were chosen from the general venire for voir dire examination in Mims. One of the four was excused for cause and the other three were excused by the state through the use of peremptory challenges. The Second Circuit found a "pattern" of excluding black veniremen from service on the petit jury which could be indicative of the prosecutor excluding prospective jurors on the basis of race. State v. Mims, 505 So.2d at 751.
In State v. Thompson, 516 So.2d 349 (La.1987), cert. den., ___ U.S. ___, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988), a capital case, the Louisiana Supreme Court reviewed a proceeding wherein the state had used each of its peremptory challenges to exclude prospective jurors who were black. Therein, the trial judge found that the defendant had not made the "particularized showing" required by Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), denied defendant's motion for a mistrial, and did not require the state to articulate reasons for its use of peremptory challenges.[4] The United States Supreme Court rendered Batson v. Kentucky after *700 the conviction; and, in accordance with Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the Louisiana Supreme Court reviewed the challenges under the standards set forth in that decision.[5] After considering all relevant circumstances, the court concluded that the defendant had failed to show the state exercised its peremptory challenges with a discriminatory purpose although the state exercised all of its peremptory challenges against black prospective jurors. Noting that four of the twelve jurors were black, and each was selected before the state exhausted its peremptory challenges, that three other prospective black jurors were accepted by the state before it had exhausted its peremptory challenges (but were excused by defendant), and that nothing in the prosecutor's questions or statements during voir dire supported an inference of a discriminatory purpose, the court found that the defendant failed to establish a prima facie case of purposeful discrimination.
Here, unlike Thompson, it appears that the defendant was tried by an all white jury. There is also no showing in this case that the state accepted any black prospective jurors before they were excused for some other reason. We find these facts to be more closely related to those in Williams and Mims than to Thompson.
Defendant essentially sets forth two bases to support his claim of discriminatory selection. Those bases are: (1) that all of the blacks who were determined to be eligible for the jury were peremptorily challenged by the state; and (2) other blacks were excluded for various causes, which resulted in defendant's trial before an all white tribunal.
The first basis for defendant's claim, that all eligible black prospective jurors were peremptorily challenged by the state in the instant trial, is the only ground which supports his argument. We find the fact that defendant was tried by an all white jury to be disturbing. Because of the compelling nature of defendant's claim and out of an abundance of caution we find defendant has made a prima facie showing of purposeful discrimination in the selection of the petit jury.
As in Batson, we remand this case to the trial court for a hearing and for further proceedings to allow the state an opportunity to provide racially neutral explanations for the actions taken in impaneling this jury.[6] If the prosecutor is unable to provide racially neutral explanations for the exercise of his peremptory challenges acceptable to the trial court, Batson requires that the defendant's conviction be set aside and a new trial granted. If the trial court finds the explanations sufficient, defendant may appeal anew to this court within the delays set forth in La.C.Cr.P. art. 914. In the absence of such a timely appeal, we affirm defendant's conviction and his sentence shall become absolute.
As to the second basis, defendant urges that the exclusion of other prospective black jurors for various causes supports his claim that he made a prima facie showing of discrimination. Initially, we note that defendant failed to build a record to enable this court to review his claim. Although as defendant alleges, many persons were excluded for cause based upon their inability to follow the law relative to the imposition of capital punishment, the race of those prospective jurors was not designated for the record. Moreover, the state was entitled to challenge prospective jurors who could not follow the law. See Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). See also La.C.Cr.P. art. 798(2). Thus, despite defendant's unique objection and argument setting forth this claim during voir dire, we do not find that the removal for legal cause of prospective black jurors supports defendant's claim that the state exercised its *701 peremptory challenges in a discriminatory manner.
Additionally, defendant argues that the pattern of challenges exercised by the state during the first trial is a basis for a present finding of discriminatory exclusion by the state. We note, as did the trial court, that the first jury included six black jurors and a black alternate juror. Considering the racial composition of the first jury, it would be incongruous to hold that the jury selection in the first trial would have assisted the defendant in establishing a pattern of discriminatory exclusion. We find no merit to that argument.

IMPROPER ARGUMENT
By assignment of error number seven, defendant submits that the trial court erred by denying his motion for a mistrial after the state erroneously argued the law of double jeopardy to the jury. Defendant repeatedly claimed that he was guilty only as an accessory after the fact of the murder by Cotton and Johnson. He contends that, during rebuttal argument, the state incorrectly advised the jury that defendant could not be retried as an accessory after the fact if he were acquitted of the instant charges.
Since the defense complaint that the prosecutor misstated the law to the jury does not fall within one of the specified grounds authorizing mistrial, La.C.Cr.P. arts. 770 and 775, it must be considered as possibly within the general mandate that a mistrial be granted "when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial...." La.C.Cr.P. art. 775.
Pretermitting the merits of defendant's claim that the state misrepresented the law of double jeopardy, the prosecutor was entitled to answer the argument advanced in defendant's plea to the jury. If, in his effort to do so, the prosecutor erred on the question of law at issue, this error would not furnish grounds for setting aside this conviction. The prosecutor is not held to infallibility in the law. See State v. Viator, 246 La. 809, 167 So.2d 374, 377-378 (1964). The jury is instructed to take the law from the judge, not opposing counsel. Before a verdict will be set aside on the ground of improper argument, this Court must be thoroughly convinced that the jury was in some manner influenced by the remarks and that the remarks contributed to the verdict. State v. Bates, 495 So.2d 1262, 1273 (La.1986), cert. den., 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 826 (1987). See also State v. Perry, 502 So.2d 543, 561 (La.1986), cert. den., 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987). No such showing has been made herein. Accordingly, this assignment of error has no merit.
For the reasons assigned, the conviction and sentence of the trial court are conditionally affirmed. Additionally, we remand this case to the trial court for further proceedings not inconsistent with this opinion.
CONDITIONALLY AFFIRMED AND REMANDED.
NOTES
[1] The state amended the indictment as to Johnson and Cotton and each was permitted to plead guilty to a charge of second degree murder, reserving his right to appeal the denial of his motion to suppress statements given to investigating officers. Both convictions were affirmed on appeal. See State v. Cotton, 533 So.2d 1075 (Table), (La.App. 1st Cir.1988), writ denied, 541 So.2d 869 (La.1989); State v. Johnson, 536 So.2d 841 (La.App. 1st Cir.1988), writ denied, reconsideration denied, 540 So.2d 338 (La.1989).
[2] After the trial court found no evidence of discrimination, defendant sought relief from this court. We denied the writ, noting that defendant failed to comply with the Uniform Rules and, moreover, that defendant had an adequate remedy by appeal in the event of conviction. State v. Young, 495 So.2d 948 (La.App. 1st Cir.1986). Defendant then applied for writs to the Louisiana Supreme Court, which noted the application had been received after jury selection was complete, and that the issue of racial discrimination in the exercise of peremptory challenges could be raised after trial. State v. Young, 495 So.2d 949 (La.1986).
[3] The Louisiana Supreme Court modified the Fifth Circuit's ruling in Williams to expressly state that the proper time for the trial court to permit the defendant to assert his claim of discriminatory challenges was during the trial, rather than in a post-conviction proceeding.
[4] After the sentencing phase, the state voluntarily read into the record its reasons for exercising each peremptory challenge; therefore, they were available for the Supreme Court's review. Nevertheless, it is clear that the Court found that defendant had not established a prima facie case of discriminatory challenges and that the state was not required to furnish reasons for its challenges.
[5] In Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the United States Supreme Court determined that the holding of Batson was to be applied retroactively to all cases pending on direct review or not yet final.
[6] We do not find it necessary for the state to supply reasons for the challenges exercised during voir dire of the first trial.